# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 16-20070-01/02-CM** |
| | ) | |
| **RAYMOND EDWARDS** | ) | |
| **and** | ) | |
| **RENATA EDWARDS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## <u>MEMORANDUM & ORDER</u>

This criminal matter between the United States of America and defendants Raymond and Renata Edwards comes before the court for decision on various outstanding pretrial motions and other filings—filings not presented as motions but nonetheless requesting pretrial rulings on the admissibility of specific evidence. After careful consideration of the parties' positions and relevant law, the court rules as follows:

1. Defendants' Motion to Dismiss The Trademark Counts (Doc. 173) is <u>denied</u>**.**

2. Defendants Ray and Renata Edwards's Motion To Dismiss Counts 28–42 (Doc. 174) is <u>denied</u>.

3. Defendants Raymond and Renata Edwards's Motion To Strike Surplusage (Doc. 175) is <u>denied</u>.

4. Government's Motion To Strike Asset $3,467.00 From Second Superseding Indictment (Doc. 167) is <u>granted</u>.

5. Joint Motion Of Defendants Raymond and Renata Edwards For Reconsideration Of Motion To Suppress Electronic Information Obtained In Violation Of Fourth Amendment (Doc. 177) is <u>denied</u>.

6. Defendants' Motion In Limine To Exclude All Evidence Collected, Generated Or Having Any Connection To Deceased Witness (Doc. 116) is <u>denied without prejudice in part and denied in part</u>.

7.  Government's Motion In Limine (Doc. 93) is <u>granted in part and denied without prejudice in part</u>.

8.  Defendants' Joint Motion In Limine And Memorandum In Support To Exclude Reference To Agent Morrow's Death (Doc. 112) is <u>granted</u>.

9.  Defendants' Motion In Limine Regarding The Use Of The Term Counterfeit (Doc. 115) is <u>denied</u>.

10. Government's Notice Of Intent To Offer Evidence Pursuant To Federal Rule Of Evidence 902(11), And Motion In Limine To Determine Admissibility Of The Business Records (Doc. 81) is <u>granted in part and denied without prejudice in part</u>.

11. Government's Supplement Notice Of Intent To Offer Evidence Pursuant To Federal Rule Of Evidence 902(11), 902(14), And Motion In Limine To Determine Admissibility Of The Business Records (Doc. 183) is <u>granted in part and denied without prejudice in part</u>.

12. Government's Motion In Limine, Alternatively, Notice Pursuant To Rule 404(b) (Doc. 85) is <u>granted in part and denied without prejudice in part</u>.

13. Government's Supplemental Notice Pursuant To Rule 404(b) (Doc. 105) is <u>granted</u>.

14. Defendants Raymond and Renata Edwards's Motion To Exclude Evidence Of Other Crimes, Wrongs, Or Acts (Doc. 176) is <u>denied</u>.

15. Government's Motion In Limine (Doc. 92) is <u>denied without prejudice</u>.

16. Government's Consolidated Motions In Limine (Doc. 114) is <u>denied without prejudice</u>.

Below, these rulings are more fully explained.

—————————————————

| **1.  Defendants' Motion to Dismiss The Trademark Counts (Doc. 173)** |
| :--- |
| **2.  Defendants Ray and Renata Edwards's Motion To Dismiss Counts 28–42 (Doc. 174)** |

The court first addresses defendants' two recently filed motions to dismiss, Docs. 173 and 174.

In Doc. 173, defendants move to dismiss Counts 1–22 of the Second Superseding Indictment. These counts charge, in relevant part, that defendants conspired to and, in fact did, traffic in goods bearing a counterfeit mark, in violation of 18 U.S.C. § 2320(a)(1).  As to Count 1, the conspiracy count, defendants argue the two-fold position that the indictment fails to state an offense because: (1) it fails to

allege all four of 18 U.S.C. § 2320(f)(1)(A)'s components defining a "counterfeit mark" and (2) instead alleges that defendants trafficked in genuine goods—conduct that defendants believe § 2320(g) immunizes from prosecution. As to Counts 2–22, the counts alleging specific acts of trafficking in computer batteries and power adapters bearing a counterfeit mark, defendants seek dismissal under Federal Rule of Criminal Procedure 16 as a sanction for the government's alleged failure to produce evidence that would enable defendants to determine whether the computer batteries and power adapters at issue are, in fact, non-genuine as alleged; because, again, if only genuine goods are involved, defendants argue § 2320(g) immunizes their conduct from prosecution. The government responds that affixing a counterfeit mark to a genuine good makes the good counterfeit. That being so, the government argues that it alleged in the indictment and produced to defendants all required information.

At its core, defendants' motion to dismiss the trademark counts begs the legal question: Must one *necessarily* traffic in a non-genuine good to traffic in "goods" bearing a "counterfeit mark"? The answer, this court finds, is no.

To interpret § 2320 to criminalize trafficking in only non-genuine goods would require this court to ignore Congress's chosen language. In 21 of the 22 instances "good" or "goods" appear throughout § 2320—subsection (a)(1) included—Congress made no distinction between genuine and non-genuine goods. It chose simply to speak generally of "goods." This lack of specificity appears intentional. Only once, in § 2320(g), did Congress carve out an exception; there, it specified that the statute is not directed at "genuine goods" repackaged so as "not . . . to deceive or confuse." Read in its entirety, § 2320's language convinces this court of two things. First, had Congress intended to limit criminal liability to trafficking in specifically non-genuine goods, it knew but never used the language appropriate to achieve that aim. Second, by expressly excluding from the general term "goods" only "genuine goods" repackaged so as "not . . . to deceive or confuse," Congress kept open the possibility that even genuine

goods trafficked in a deceptive or confusing manner could violate the statute. No doubt, that scenario presents a rare and more-difficult-to-prove case, as it requires evidence that the purchasing public is likely to be deceived or confused by receiving a trademark holder's genuine product bearing a mark substantially similar to the trademark holder's registered mark. Still, Congress's chosen language supports such a case's prosecution.

To summarize, § 2320 criminalizes trafficking in "counterfeit goods." But a good need not necessarily be non-genuine to be a "counterfeit good." To be a "counterfeit good" requires only that the combination of a particular good and mark result in a product likely to leave consumers deceived, confused, or mistaken as to the good's actual origin or quality.[1]

What this all means for defendants' motion to dismiss the trademark counts is plain. The government's Second Superseding Indictment need not allege goods of any particular genuine or non-genuine character. The indictment need not allege all four of § 2320(f)(1)(A)'s components defining a "counterfeit mark." Pleading a legally sufficient violation of § 2320(a)(1) simply requires allegations tracking the statute's language that defendants trafficked in "goods" and "knowingly use[d] a counterfeit mark on or in connection with such goods."[2] As such, use of the general descriptor "goods" and "counterfeit mark" suffices.[3] Having reviewed the indictment's allegations, the court concludes that Counts 1–22 set forth the elements of the offenses intended to be charged and with sufficient added

---

[1] *See* 18 U.S.C. § 2320(a)(1), (f)(1)(A) (criminalizing the knowing "use[]. . . or . . . connection" made between any intentionally trafficked "goods" and a "counterfeit mark"—meaning, a mark used in connection with goods that, by virtue of being identical with or substantially indistinguishable from a mark actually registered and in use for the type of good trafficked, "is likely to cause confusion, to cause mistake, or to deceive."); *United States v. Torkington*, 812 F.2d 1347, 1352 (11th Cir. 1987) (Section 2320(f)(1)(A)(iv) "is satisfied when the use of the mark in connection with the goods . . . in question would be likely to confuse the purchasing public."); *United States v. Hanafy*, 302 F.3d 485, 488 (5th Cir. 2002) (Section "2320 was intended to prevent trafficking in goods that were similar to but different"—in origin, source, quality, or safety—"than the goods normally associated with the mark").

[2] *See also United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (citing *United States v. Akers*, 215 F.3d 1089, 1101 (10th Cir. 2000) (generally an indictment which sets forth the elements of the crime by tracking the language of the statute is sufficient)).

[3] *See United States v. Ressler*, 2007 WL 602210, at *3 (N.D. GA Feb. 16, 2007) ("[U]se of the general descriptor 'counterfeit' is sufficient under the Federal Rules to charge a violation of § 2320.").

factual detail to satisfy the Fifth and Sixth Amendment concerns that the grand jury "only return an indictment when it finds probable cause to support all the necessary elements of the crime" and that, once returned, the indictment "inform[] the defendant of the nature and cause of the accusation."[4]

Understanding that one need not necessarily traffic in non-genuine goods to violate § 2320(a)(1), it follows that the government need not, as argued by defendants, produce evidence of non-genuine goods. The government's discovery obligations, moreover, only require that the government not withhold discoverable evidence in its possession. The *withholding* of such evidence, however, is not what defendants argue. What defendants argue, rather, is that the government's produced discovery shows a *lack of evidence* they believe necessary to support a conviction. That argument must be resolved by the jury at trial, not pretrial by this court. Accordingly, defendants' motion to dismiss trademark counts is denied.

The court now considers defendants' other motion to dismiss, Doc. 174. Counts 28–42 charge that defendants devised a scheme to defraud the U.S. Postal Service by placing shortpaid parcels in the mail, in violation of 18 U.S.C. § 1341. Defendants argue the court should dismiss these mail-fraud charges as a sanction. Defendants' argument begins from the "now settled" position, originating from *McNally v. United* States, 483 U.S. 350 (1987), that "by including the phrase 'obtain money or property'" within § 1341, "Congress intended to limit the reach of mail fraud 'to the protection of property rights.'"[5] From this, defendants argue that the government must identify an impaired property interest. And the evidence allegedly relied on by the government before the grand jury to substantiate that property interest—statements that defendants' business entities entered into "agreements" with the U.S. Postal

---

[4] *United States v. Prentiss*, 206 F.3d 960, 964 (10th Cir. 2000) (quotation omitted).

[5] *United States v. Camick*, 796 F.3d 1206, 1214 (10th Cir. 2015) (quoting *Skilling v. United States*, 561 U.S. 358, 402 (2010)). The mail-fraud statute's scope now also protects against deprivations of "'the intangible right of honest services.'" *Welch*, 327 F.3d at 1104 (quoting 18 U.S.C. § 1346); *see also United States v. Stewart*, 872 F.2d 957, 960 n.2 (10th Cir. 1989).

Service to use postage evidencing systems—was, according to defendants, requested of but never produced by the government—at least, not in the form of any sort of written agreements. The evidence of "agreements" considered by the grand jury was therefore, in defendants' view, either (1) falsified or (2) true but withheld from defense. Either way, defendants argue the government's conduct justifies dismissing the mail-fraud counts.

Defendants are correct that the government must identify a property interest.[6] But their position on the government's evidence incorrectly presupposes three things this court declines to accept.

First, this court declines to accept that the lack of produced written agreements necessarily means the testimony of "agreements" referred to before the grand jury is false. Defendants complain that the grand jury was told about "agreements." Initially, this court would note that this testimony, at least as set out in defendants' motion, never specified the agreements took a written form. Nonetheless, uncontested representations from the government show that defendants' requests for written agreements or emails that would substantiate such agreements were forward to the U.S. Postal Service. The U.S. Postal Service responded that no such information exists. At a September 25, 2019 pretrial hearing, the government elaborated that, owing to the routine operation of the U.S. Postal Service's email retention policy, such information would have been irretrievably discarded no more than 120 days after its creation. Given that the current indictment alleges mail-fraud occurring between April 2014 and June 2015, it seems that documents created prior to or contemporaneously with these mailings would, absent specific intervention, have been discarded well before the government's initial July 7, 2016 indictment. And defendants make no argument that anything obligated the U.S. Postal Service to take such specific-intervention measures. This in mind, the court lacks a sufficient basis to accept defendants'

---

[6] *United States v. Shelton*, 848 F.2d 1485, 1494 (10th Cir. 1988) ("[A]n indictment that does not . . . alleg[e] a loss of money or property by the victim cannot stand in light of *McNally*."); *Stewart*, 872 F.2d at 959–60 (noting that *McNally* limited § 1341 "to the protection of property rights")

characterization that the testimony the grand jury received of "agreements" was false. And to the extent defendants argue the government lacked support for the presented testimony of agreements, *United States v. Calandra*, 414 U.S. 338, 345 (1974), makes clear that "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence."

Second, this court declines to accept defendants' implied position that a written agreement is necessary to establish that the U.S. Postal Service had a property interest. Section four of the Restatement (Second) of Contracts explains that "[a] promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct." Comment "a." further illustrates that point by describing this implied agreement: "A telephones to his grocer, 'Send me a ten-pound bag of flour.' The grocer sends it. A has thereby promised to pay the grocer's current price therefor." Here, defendants directed the U.S. Postal Service to send certain mail items. The U.S. Postal Service delivered those mail items, thereby entitling it to payment from defendants for the price of its services. That value in its rendered mailing services is a property interest. That interest is no less valid because it arises under a non-written agreement.

Which leads the court to the third presupposition it declines to accept, that the government must prove actual loss to the U.S. Postal Service's property interest. Defendants' frustrations over the lack of any written agreements actually seem to focus on the difficulty they are having trying to independently verify or disprove the government's alleged figures for actual loss to U.S. Postal Service. But "pecuniary loss is not required under § 1341."[7] As stated in *United States v. Kelley*, 929 F.2d 582, 585 (10th Cir. 1991), "[t]he gist of . . . mail fraud . . . is devising and executing, or intending to execute, a scheme to

---

[7] *United States v. Deters*, 184 F.3d 1253, 1258 (10th Cir. 1999).

defraud, and the ultimate success or failure of the scheme is immaterial. In other words, the government does not have to prove that the [mail-fraud] victim suffered actual pecuniary loss from the scheme."

With these things in mind, the court finds no basis to dismiss the mail-fraud charges as a sanction. Generally, "a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors . . . significant[ly] infringe[d] on the grand jury's ability to exercise independent judgment."[8] On the facts presented concerning the complained-of testimony, this court cannot say that the government knowingly introduced false testimony and, thereby, (1) erred (2) in so serious a manner that this court should doubt the grand jury's decision to indict.[9] The court also finds neither the bad faith nor prejudice required to justify imposing the "extreme" discovery sanction of dismissing the indictment.[10] To the extent the government's failure to produce written agreements amounts to a discovery violation, no facts show that the government withheld such information in bad faith. Any prejudice to defendants from the lack of written agreements, moreover, is minimal. Such written agreements are unnecessary to proving the U.S. Postal Service's property interest. And if necessary to any factual matter, such agreements are necessary only to deciding the legally immaterial matter of actual loss. Defendants' motion to dismiss the mail-fraud counts is therefore denied.

### 3. Defendants Raymond and Renata Edwards's Motion To Strike Surplusage (Doc. 175)

Turning to Doc. 175, defendants argue that the Second Superseding Indictment's paragraph 29 should be struck of the alleged specific figures for average-per-mailing and approximate-aggregate loss. Defendants argue the specific dollar amount figures are not essential mail-fraud elements but are

---

[8] *United States v. Hillman*, 642 F.3d 929, 933–34 (10th Cir. 2011).

[9] *United States v. Crockett*, 435 F.3d 1305, 1316–17 (10th Cir. 2006) (affirming the district court's denial of a similar motion to dismiss indictment as defendant failed to establish that the complained-of witness "uttered a false statement" before the grand jury); *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1244–45 (10th Cir. 1996) (dismissal of charges not warranted where evidence showed that the complained-of grand jury testimony "was merely mistaken, and . . . at most technically inaccurate.").

[10] *United States v. Robertson*, 45 F.3d 1423, 1440 (10th Cir. 1995) (parenthetically noting that "absent bad faith or prejudice, the extreme sanction of dismissal of an indictment generally is not appropriate [as a] sanction for discovery violations.")

prejudicial. The government responds that, while not essential to proving a scheme to defraud, the specific figures are nonetheless relevant to showing the breadth of defendant's scheme and their motive for the scheme.

Federal Rule of Criminal Procedure 7(d) authorizes a court to exercise its discretion to strike from an indictment "surplusage," including "allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant."[11] Here, the court finds that the specific figures are relevant to the charged mail-fraud scheme and not overly prejudicial. To be clear, the specific figures are irrelevant in the sense that the government does not have to prove actual pecuniary loss from the alleged mail-fraud scheme.[12] But still, the government does have to prove a scheme to defraud.[13] And the specific figures are relevant to and probative of defendants' motive to commit the scheme.[14] The court further finds that any prejudice resulting from including the figures is minimal and may be tempered by appropriate instruction upon defendants request.[15] Defendant's motion to strike paragraph 29's specific figures is therefore denied.

> **4. Government's Motion To Strike Asset $3,467.00 From Second Superseding Indictment (Doc. 167)**

In Doc. 167, the government moves the court to strike from the Second Superseding Indictment's Forfeiture Allegation I the asset described as "$3,467.00 in U.S. currency from 14117 Parkhill Lane,

---

[11] *United States v. Schuler*, 458 F.3d 1148, 1153 (10th Cir. 2006) (quotation omitted).

[12] *United States v. Kelley*, 929 F.2d 582, 585 (10th Cir. 1991).

[13] *United States v. Smith*, 133 F.3d 737, 742 (10th Cir. 1997) ("To establish mail fraud, the government must prove the existence of a scheme to defraud . . . .").

[14] *See United States v. Jackson*, 850 F. Supp. 1481, 1507 (D. Kan. 1994) (refusing to strike allegation that defendant "referred 43 patients . . . for which [defendant's hospital] realized $609,198.00 in revenue," in fraud case, as the allegation went to defendants intent and motive); *United States v. Daniels*, No. 99-40099-01-DES, 2000 WL 764951, at *2 (D. Kan. May 22, 2000) (refusing to strike allegation that defendant "'performed surgery at 4 to 5 times the local and national average'" in fraud case, as the figures were "directly relevant to defendant's motive to commit the scheme.")

[15] *See Lowther v. United States*, 455 F.2d 657, 666–67 (10th Cir. 1972) ("The failure to strike certain portions of the Indictment was not prejudicial because the Court's instructions that the Indictment was not evidence; that guilt or innocence was to be determined on the evidence; that the Government was not required to prove each aspect of the Indictment; and that a conviction could not be upheld on suspicion or conjecture.")

Overland Park, KS." Defendants present no objection to this request. Accordingly, the court grants the government's motion to strike asset.

---

**5. Joint Motion Of Defendants Raymond and Renata Edwards For Reconsideration Of Motion To Suppress Electronic Information Obtained In Violation Of Fourth Amendment (Doc. 177)**

---

In Doc. 177, defendants ask this court to reconsider its earlier ruling denying their March 26, 2019 Motion In Limine To Exclude Reference To Various Forms of Electronic Information Obtained in Violation Of Fourth Amendment (Doc. 117).

Generally, reconsideration is appropriate only "when the court has misapprehended the facts, a party's position, or the law. Specific situations where circumstances may warrant reconsideration include: '(1) an intervening change in the controlling law,' (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[16] However, a motion to reconsider "should not be used to . . . advance arguments that could have been raised earlier."[17]

Here, defendants have advanced no argument that reconsideration is necessary based on an intervening change in the controlling law or a need to correct clear error or prevent manifest injustice. Defendants do not argue the court misapprehended the facts, their original position, or the controlling law. Defendants do argue, rather, that evidence previously unavailable to them further supports arguments raised in their original untimely (and mislabeled) motion to suppress. But alleging the existence of new *supporting* evidence—even supporting evidence recently discovered—is not the same as alleging *new* evidence that supports a previously unavailable legal argument. Stated otherwise, when this court refused to consider the suppression issues identified in Doc. 117, it did so by finding that defendants had provided nothing rising to the level of good cause to excuse their tardiness in challenging the government's search warrants some 21 months after the court's June 20, 2017 deadline. Claiming

---

[16] *United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015).
[17] *Id.*

now that freshly discovered evidence—using the words of defendants' motion—"provides additional insight"[18] supporting those previously untimely suppression arguments still does nothing to explain defendants' original delinquency. The court finds that now, just as when defendants first presented these suppression issues, the essential information necessary for defendants to frame these legal arguments was available to defendants but never used prior to the original deadline. As such, the court still finds no good cause to consider defendants' arguments. Defendants' motion to reconsider is denied.

> **6. Defendants' Motion In Limine To Exclude All Evidence Collected, Generated Or Having Any Connection To Deceased Witness (Doc. 116)**

The parties have filed various motions in this case concerning the admissibility of evidence in light of the cancer-related death of the case's lead investigator, FBI Special Agent Melissa Morrow. In Doc. 116, defendants initially move to exclude "any evidence collected, generated or having any connection to Ms. Morrow" on the bases that admitting such evidence would violate defendants' constitutional confrontation, compulsory process, and due process rights.[19] For the following reasons, defendants' motion is denied without prejudice in part and denied in part.

Defendants first argue that admitting any evidence collected, generated, or having any connection with Special Agent Morrow will violate their Sixth Amendment right to "be confronted with the witnesses against [them]."[20] Consistent with the Confrontation Clause, "out-of-court testimonial statements may be admitted against a defendant only if . . . the declarant is now unavailable *and* the defendant had a prior opportunity to cross-examine the declarant."[21] Special Agent Morrow is unavailable for trial. Defendants had no prior opportunity to cross-examine Special Agent Morrow. And statements taken or created by Special Agent Morrow in aid of this case's investigation qualify as

---

[18] Doc. 177, at 2.
[19] Doc. 116, at 1.
[20] U.S. Const. amend. VI.
[21] *United States v. Pablo*, 696 F.3d 1280, 1286 (10th Cir. 2012) (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).

"testimonial."[22]  "A defendant's confrontation rights are implicated by the admission of testimonial statements against the defendant, however, *only when they are admitted to establish the truth of the matter asserted in the statement*."[23]  Apart from the specific undercover recordings identified by the Government's Motion in Limine (Doc. 93), which the court will take up shortly, this court simply is not positioned to determine pretrial whether broadly "any evidence collected, generated or having any connection to Ms. Morrow" will be offered by the government and specifically to prove the truth of the matter asserted.[24]  Accordingly, defendants' motion is denied without prejudice.  *Recognizing the importance of defendants' confrontation rights, however, this court orders that the government not introduce any out-of-court statements by Special Agent Morrow until it first identifies the evidence at a bench conference with defense counsel present.  At that time, the court will take up any objection to the evidence and rule on its admissibility.*

Defendants next argue that, by doing nothing to convey to defense Special Agent Morrow's terminal health condition, the government deprived them of an opportunity to preserve her testimony and, thereby, their Fifth and Sixth Amendment rights "to present a defense by compelling the attendance, and presenting the testimony, of [their] own witnesses."[25]  Where defendants have claimed that government action has deprived them of a witness, courts, following *United States v. Valenzuela-Vernal*, 458 U.S. 858 (1982) and *Arizona v. Youngblood*, 488 U.S. 51 (1988), have required defendants to show:

---

[22] *See Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011) ( "A document created solely for an 'evidentiary purpose' . . . made in aid of a police investigation, ranks as testimonial."); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 316 (2009) (criticizing any interpretation of the confrontation clause that would admit "a police officer's investigative report describing the crime scene . . . absent an opportunity to examine the officer."); *United States v. Charles*, 722 F.3d 1319, 1323 (11th Cir. 2013) ("'Statements taken by police officers in the course of interrogations are definitely testimonial.' . . . This includes not only 'technical legal' interrogations but also 'witness statements given to an investigating police officer.'"); *United States v. Moreno*, 809 F.3d 766, 774 (3rd Cir. 2016) (finding a Confrontation Clause violation where a special agent read into the record summaries of witness interviews, given that the summaries were "investigative reports prepared by a government agent in actual anticipation of trial.").

[23] *Pablo*, 696 F.3d at 1287 (citing *Crawford*, 541 U.S. at 60 n.9) (emphasis added).

[24] *See United States v. Gonzalez-Perez*, 573 F. App'x 771, 778 (10th Cir. 2014) (suggesting that "fact-bound determination[s] dependent upon the character of evidence introduced at trial" are not the type of issues that can be finally decided in a pretrial hearing).

[25] *United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005).

(1) the government acted in bad faith by allowing the witness to become unavailable and (2) the witness' unavailability prejudiced defendant by eliminating testimonial evidence that would have been both material and favorable to the defense.[26]  Defendants fail to make the initial showing of bad faith.

"'The presence or absence of bad faith . . . must necessarily turn on the [government's] knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'  Negligence is not enough to establish bad faith.  There must be (1) willful conduct motivated by a desire to obtain a tactical advantage over the defense or (2) a departure from the government's normal . . . procedures."[27]  Here, no evidence suggests that the government should have viewed its own lead agent as an exculpatory witness for the defense.  Indeed, any claim the government should have viewed Special Agent Morrow as having exculpatory testimony to offer defense is difficult to reconcile with defendants' own sweeping efforts to exclude, under the Confrontation Clause, "any evidence collected, generated *or having any connection to* Ms. Morrow."[28]  No evidence, moreover, shows that pursuit of a tactical advantage motivated the government not to disclose Special Agent Morrow's cancer diagnosis.  Rather, from representations made by the government at the court's April 5, 2019 pretrial hearing, it seems that, if anything other than ordinary negligence motivated the government's nondisclosure, it was optimism for Special Agent Morrow's prognosis—a faith this court will not label "bad faith."  Even more, it is difficult to imagine what tactical advantage the government could have gained by failing to disclose Special Agent Morrow's cancer diagnosis.  Had she lived, the nondisclosure would neither advantage nor disadvantage either party.  And now, no doubt, Special Agent Morrow's death makes presenting the government's case against defendants more difficult.  The government now may not introduce any of

---

[26] *See, e.g.*, *United States v. Iribe-Perez*, 129 F.3d 1167,1173 (10th Cir. 1997) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982) and *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

[27] *Gonzalez-Perez*, 573 F. App'x at 776 (quoting *Youngblood*, 488 U.S. at 56) (other citations omitted).

[28] Doc. 116, at 1.

Special Agent Morrow's out-of-court statements to prove the truth of the matter asserted.[29]   Finally,

defense has not identified any normal procedures that the government's nondisclosure ignored.   Under

these circumstances, the court finds the government did not act in bad faith.   Accordingly, this court

need not assess the value to the defense of Special Agent Morrow's hypothetical testimony.[30]

## 7.   Government's Motion In Limine (Doc. 93)

The court now turns to the government's motion in limine seeking a pretrial ruling on the

admissibility of two undercover recordings, Doc. 93.   Both recordings contain statements from two

undercover special agents, including Special Agent Morrow.   The first recording also contains statements

from an employee of defendants' business.   The second recording also contains statements from both

defendants.   Defendants take issue with the admissibility of statements from Special Agent Morrow,

their business's employee, and their own statements.

Defendants challenge the admissibility of Special Agent Morrow's statements on the already-

mentioned basis that their admission would violate defendants' constitutional confrontation rights.   As

recently discussed, "[a] defendant's confrontation rights are implicated by the admission of testimonial

statements . . . *only when they are admitted to establish the truth of the matter asserted in the*

*statement*."[31]   Here, the government asserts that it is offering Special Agent Morrow's statements for no

purpose other than "to provide context for the defendants' statements."[32]   The government argues that

presenting defendants' statements in isolation, without Special Agent Morrow's statements for context,

risks confusing the jury.   Further, the government notes that, due to Special Agent Morrow's undercover

---

[29] *See Gonzalez-Perez*, 573 F. App'x at 777 (finding no bad faith where "the government's case also took a hit" in the witness' absence).

[30] *See United States v. Garcia*, 761 F. App'x 815, 818 (10th Cir. 2019) ("A court may deny a motion . . . based on the defendant's failure to satisfy either the bad faith or prejudice prong."); *Gonzalez-Perez*, 573 F. App'x at 776 ("Because the government agents did not act in bad faith, we need not address the particulars of [the unavailable witness'] possible testimony.").

[31] *Pablo*, 696 F.3d at 1287 (citing *Crawford*, 541 U.S. at 60 n.9) (emphasis added).

[32] Doc. 93, at 4–5.

role, many of her statements are in fact deliberately untrue and, as such, would not be offered for their truth. The court finds the government's arguments persuasive. As Special Agent Morrow's statements are being offered for a purpose other than the truth of the matter asserted, defendants' confrontation rights are not implicated.[33]

Defendants next challenge the admissibility of statements by their business's employee. Defendants argue that, while the employee's statements may qualify as admissible against the defendants' business under Rule 801(d)(2)(D) of the Federal Rules of Evidence, the employee's statements are inadmissible against the defendants indicted only in their individual capacity. Defendants provide no authority for so limiting the rule excluding from the definition of hearsay statements made by an opposing "party's agent or employee on a matter within the scope of that relationship and while it existed."[34] The Tenth Circuit, in contrast, in *United States v. Young*, 736 F.2d 565 (10th Cir. 1983), states that when, at a criminal trial, a corporate employee's "statement is offered against another corporate employee, instead of the corporation, proper admission under Rule 801(d)(2)(D) will necessarily depend on the nature of the relationship between the declarant and the defendant. . . . [I]f the factors which normally make up an agency relationship are present, the evidence should not be excluded simply because the statement is offered against a corporate officer, rather than the corporation."[35] Here, proper admission of the employee's statements—and thus the first undercover recording—will depend on the government laying the proper foundation for the agency relationship between the employee and the defendants. As to the first undercover recording, therefore, the government's motion to rule such evidence admissible in advance of trial is denied without prejudice.

---

[33] *See United States v. Ailsworth*, 948 F. Supp. 1485, 1490 (D. Kan. 1996) (discussing Second and Eighth Circuit authority in support of conclusion that statements in a recording "offered only for 'context' and not for the truth of the matter asserted . . . are not hearsay").

[34] Fed. R. Evid. 801(d)(2)(D).

[35] *Young*, 736 F.2d at 567–68, *rev'd on other grounds,* 470 U.S. 1 (1985).

The court will reconsider admission of the evidence at trial should the government lay the proper foundation.

Defendants' remaining challenge concerns the admissibility of their own statements on the second undercover recording. Defendants argue that, while each defendants' statements may be admissible by the government as statements made by an opposing party offered against the respective defendant-speaker, the statements are inadmissible against the defendant non-speaker without proof the statements meet Rule 801(d)(2)(E)'s hearsay exception for statements "made by a party's coconspirator during and in furtherance of the conspiracy."[36] But the statements' admissibility or inadmissibility on one alleged basis does not change their admissibility on a separate, independent basis. In other words, whether or not the statements qualify under the coconspirator exception to the hearsay rule, the statements are nonetheless independently admissible under Rule 801(d)(2)(A)'s party admission exception.[37] And to the extent defendants suggest that admission of the statement might raise Confrontation Clause issues if the defendants do not testify, the court disagrees. Under *United States v. Clark*, 717 F.3d 790 (10th Cir. 2013), the statements—made neither at a hearing, trial, or police interrogation, nor, given the undercover nature of the operation, under circumstances where defendants objectively would have foreseen that the statements would be used in the investigation or prosecution— do not qualify as testimonial and thus would "fall outside the protective ambit of the Confrontation Clause and, by extension, *Burton*['s]" "narrow rule" limiting the admission of a non-testifying

---

[36] *See also United States v. Ramirez*, 479 F.3d 1229, 1248 n.11 (10th Cir. 2007) ("In order for statements to be admissible under Rule 801(d)(2)(E), the proponent of the evidence must establish, by a preponderance of the evidence, that: (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made during the course of, and in furtherance of, the conspiracy.").

[37] *See United States v. Mayes*, 917 F.2d 457, 463 and n.8 (10th Cir. 1990) (holding that statements by defendants in tape-recorded conversations with coconspirators were party admissions under Rule 801(d)(2)(A)); *United States v. Saunders*, 209 F. App'x 778, 783 (10th Cir. 2006) ("The 801(d)(2)(E) exception for co-conspirators does not apply, however, to [defendant's] out-of-court statements, for the simple reason that [defendant] is not a 'coconspirator of a party,' he *is* the party. . . . [Defendant's] conversations with [the coconspirator] do qualify as Rule 801(d)(2)(A) statements by a party.").

codefendant's statements.[38]  As to the second undercover recording, therefore, the government's motion to rule such evidence admissible in advance of trial is granted.

> ### 8. Defendants' Joint Motion In Limine And Memorandum In Support To Exclude Reference To Agent Morrow's Death (Doc. 112)

Turning to Doc. 112, defendants seek to exclude any references to the fact and cause of Special Agent Morrow's death, including any reference to "death, cancer, terminal illness or related terms."[39] Defendants argue that this information is irrelevant (makes no fact of consequence to the action more or less probable) and unduly prejudicial (gives the government an unfair advantage in gaining juror sympathy).  Defendants further represent the government can adequately explain Agent Morrow's absence by saying she is "unavailable to testify."[40]

The government agrees that Special Agent Morrow's death, terminal illness, cancer, or related terms, are "not relevant to the issues to be decided by the jury in this trial."[41]  The government advises that it will inform its witnesses not to mention these subjects.  As such, the government urges the court to deny the motion as moot.  The government argues, however, that such testimony should not be excluded at trial if defense counsels' questioning of any witness opens the door to reveal such information.

The court, like the government, agrees with defendants.  Evidence explaining the cause and circumstances of Special Agent Morrow's unavailability for trial is irrelevant and unduly prejudicial. Though the government intends to advise its witnesses to avoid such subjects, such precautions do not change the evidence's generally inadmissible character.  Accordingly, defendants' motion is granted. The court cautions, however, that it may reconsider its ruling should defendants introduce evidence at

---

[38] *Clark*, 717 F.3d at 813–17.
[39] Doc. 112, at 1.
[40] Doc. 112, at 1.
[41] Doc. 128, at 3.

trial that alters the relevance-prejudice analysis for evidence explaining Special Agent Morrow's unavailability.

## 9. Defendants' Motion In Limine Regarding The Use Of The Term Counterfeit (Doc. 115)

In motion Doc. 115, defendants seek to exclude (1) "all references to counterfeit goods under Fed. R. Evid. 403" and (2) "use of the term 'counterfeit mark.'"[42]  In support of the first request, defendants argue that "counterfeit" is a technical term defined by statute that requires factfinding by the jury and, as such, it should not be confused at trial with the layperson use of the word "counterfeit," in relation to goods, to mean "imitation" or "fake."  Defendants argue use of the word "counterfeit" is "not necessary to describe a good that is not authentic" but does, when so used, risk confusing the jury.[43] Witnesses, according to defendants, should therefore "be precluded from describing goods that are not authentic or genuine as counterfeit."[44]  In support of their second request, defendants argue that "counterfeit mark" is a technical term defined by statute that requires a legal conclusion only the jury can make. Defendants thus ask the court to exclude testimony referring to or opining on any mark in question as a "counterfeit mark."

To defendants' first request, the government responds that there is relevance and no unfair prejudice in the introduction of evidence required to meet the government's burden to prove the necessary element that defendants trafficked in goods and labels "to which a counterfeit mark has been applied."[45]  Prohibiting the word "counterfeit" from this trial, in the government's view, is like prohibiting the word "robbery" from a bank robbery trial or the word "methamphetamine" from a distribution of methamphetamine trial.  The government further analogizes that experts testifying on the relevant trademark holders' behalf that trademarks affixed to goods or labels the defendants trafficked

---

[42] Doc. 115, at 1.
[43] Doc. 115, at 3.
[44] Doc. 115, at 2.
[45] Doc. 128, at 4 (quoting 18 U.S.C. §§ 2320(a)(1)–(2)).

are "counterfeit" is like the permissible testimony at a methamphetamine distribution trial of a chemist opining that a particular substance contains "methamphetamine." The government finally offers that any confusion will be addressed by instructions on the crimes' elements and any necessary definitions, like defining "counterfeit mark." To defendants' second request, the government responds that Federal Rule of Evidence 704(a) "'specifically allows testimony in the form of an opinion that embraces an ultimate issue to be decided by the trier of fact.'"[46]

After considering the parties' arguments and motions, the court denies defendants' motion under the reasoning, analysis, and authorities articulated in *United States v. Reulet*, Case No. 14-40005-DDC, 2015 WL 7776876 (D. Kan. Dec. 2, 2015). As in *Reulet*, "counterfeit" is not a purely factual issue here, because the jury must apply the legal definition, as instructed by the court, to determine if the goods, labels, or stickers trafficked bore a "counterfeit mark." But while the statute defines "counterfeit mark," expert opinion testimony that the marks examined are "counterfeit" does not tell the jury how to decide the ultimate question of law—i.e., whether defendants knowingly used a counterfeit mark in connection with goods, labels, or stickers they trafficked.[47] As in *Reulet*, the witnesses likely will employ the lay meaning of "counterfeit." And the experts here are not "merely stating an opinion on an ultimate issue without adequately exploring the criteria upon which [their] opinions are based."[48] The opinion testimony here will assist the jury—who likely lack experience sufficient to understand the intricacies of trademark design, use, and application—in understanding the evidence and determining whether the goods, labels, or stickers in issue bear a "counterfeit mark." Defendants are free to cross-examine the witnesses and present contrary evidence. And the court will instruct the jury that they are free to accept or reject the experts' conclusions, and that they must apply the legal definition of "counterfeit mark" to

---

[46] Doc. 128, at 5 (quoting *United States v. Goodman*, 633 F.3d 963, 968 (10th Cir. 2011)).
[47] *Reulet*, 2015 WL 7776876 at *4.
[48] *Id.* at *5 (quoting *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993)).

make their ultimate decision of guilt or innocence. Accordingly, testimony that certain marks examined are "counterfeit"—and by extension, use of the word "counterfeit" at trial—is properly admissible under Rules 403, 702, and 704. Defendants' motion is denied. [49]

> **10. Government's Notice Of Intent To Offer Evidence Pursuant To Federal Rule Of Evidence 902(11), And Motion In Limine To Determine Admissibility Of The Business Records (Doc. 81)**
>
> **11. Government's Supplement Notice Of Intent To Offer Evidence Pursuant To Federal Rule Of Evidence 902(11), 902(14), And Motion In Limine To Determine Admissibility Of The Business Records (Doc. 183)**

Next, the court will take up government's motions Doc. 81 and Doc. 183, seeking a pretrial ruling on the admissibility by custodian certification of various purported business records. The motion involves two categories of records: (1) financial records concerning bank, loan, e-trade, and paypal accounts, and (2) email or other online communication records for Google, Blue Host, and Ebay accounts connected to defendants' businesses. For the following reasons, the court grants the government's motion as to the financial records but denies the government's motion as to the email records.

Initially, defendants do no dispute that the various financial records are admissible as records of regularly conducted business activity. The court agrees. Such financial records typically are admissible as a business record and when authenticated by custodian certification. [50] While the government still must demonstrate these records' relevance prior to their admission, the court grants the government's motion to rule the financial records admissible under Federal Rules of Evidence 803(6) and 902(11).

The email records present a different situation. Defendants direct the court to *United States v. Shah*, 125 F. Supp. 3d 570 (E.D.N.C. 2015), wherein the court determined that Google-provided emails

---

[49] *Id.*

[50] *See, e.g., United States v. Brinson*, 772 F.3d 1314, 1322–23 (10th Cir. 2014) (bank records self-authenticating); *United States v. Lewis*, 594 F.3d 1270, 1278–79 (10th Cir. 2010) (affirming admission of bank records self-authenticated under Fed. R. Evid. 902(11), in prosecution for conspiracy, mail fraud, wire fraud, and securities fraud); *United States v. Johnson*, 871 F.2d 562, 570–71 (10th Cir. 1992) (bank records met business records exception to hearsay rule); *Federal Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986) (loan documents admissible under business records exception).

from an account purported to belong to defendant were not self-authenticating but, instead, would be admitted upon authentication under Federal Rule of Evidence 901 and proof the hearsay statements qualified as statements of a party opponent.  Consistent with *Shah*, the Third Circuit, in *United States v. Browne*, 834 F.3d 403 (3rd Cir. 2016), and others have ruled that substantive content contained in online chat or email communications cannot be self-authenticated by way of certification from the host provider's record custodian alone.[51]  These authorities persuade the court that a custodian certificate will not suffice for the government to authenticate any online communication's substantive content.  A Google, Blue Host, or Ebay record custodian's certificate will self-authenticate only the limited facts that communications generally took place between particular accounts, at particular times, on particular dates.  And self-authenticated hearsay evidence offered for that limited purpose would be admissible under the hearsay rule's business records exception.  But to offer any email or other online communication to prove its substantive content—content which is neither supplied nor verified respectively by Google, Blue Host, or Ebay—the government must independently authenticate the email's or content's author under Federal Rule of Evidence 901 and provide a hearsay exclusion or exception for admitting the particular communication.[52]  Accordingly, the government's motion to determine the Google, Blue Host, and Ebay records admissible under Federal Rules of Evidence 803(6) and 902(11) is denied without prejudice.

---

[51] *See also Brinson*, 772 F.3d at 1320–21 (Facebook records authenticated where prosecution proved authorship by a preponderance of the evidence; records then admissible as statements of a party opponent); *United States v. Ayelotan*, 917 F.3d 394, 402–03 (5th Cir. 2019), *as revised* (Mar. 4, 2019) (transmittal data for Google and Yahoo! emails self-authenticating by custodian affidavit, but substantive content of the emails admissible under hearsay exceptions); *United States v. Farrad*, 895 F.3d 859, 878–80 (6th Cir. 2018) (Facebook photos not self-authenticating); *United States v. Gal*, 606 F. App'x 868, 874–75 (9th Cir. 2015) (Yahoo! Records self-authenticating under Fed. R. Evid. 902(11) as to fact emails were sent or received from particular email address; identity of the email's sender established by other extrinsic evidence); *C.f. United States v. Cestnik*, 36 F.3d 904, 906–10 (10th Cir. 1994) (content of Western Union "to-send-money" forms filled out by sender, as opposed to Western Union, not admissible under business records exception to hearsay rule).

[52] *See, e.g.*, *United States v. Browne*, 834 F.3d 403 (3rd Cir. 2016) (holding that the contents of Facebook chat communications were not self-authenticating as business records; required authentication of authorship under Fed. R. Evid. 901; and, in addition to authentication, required exception to hearsay rule if offered to prove the truth of the matter asserted).

> **12. Government's Motion In Limine, Alternatively, Notice Pursuant To Rule 404(b) (Doc. 85)**
>
> **13. Government's Supplemental Notice Pursuant To Rule 404(b) (Doc. 105)**
>
> **14. Defendants Raymond and Renata Edwards's Motion To Exclude Evidence Of Other Crimes, Wrongs, Or Acts (Doc. 176)**

The Government's next motions in limine, Doc. 85 and 105, seek a pretrial ruling on the admissibility of four categories of evidence:

(1) proceeds allegedly received and used by defendants' business entities in connection with the sale of laptop batteries and other accessories;

(2) various business and account names defendants created and used allegedly to traffic goods, labels, or stickers bearing a counterfeit mark;

(3) instances of underpaid postage and import or customs fees on goods shipped by and to defendants; and

(4) customer complaints related to both the quality or authenticity of products purchased from defendants' businesses and postage due on parcels received.

The government argues this evidence is admissible as intrinsic to the crimes charged or, alternatively, admissible under Federal Rule of Evidence 404(b) to show motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident.

In a related motion in limine, Doc. 176, defendants seek to exclude government Exhibits 215 and 216 and any other evidence referring to underpaid mailings not specifically identified in the Second Superseding Indictment, arguing that the government has not provided the proper "reasonable notice" to introduce this evidence under Federal Rule of Evidence 404(b)(2)(A).

"Federal Rule of Evidence 404(b) limits evidence of 'other' crimes, wrongs, or acts—not the crime in question . . . [and] not . . . other act evidence that is intrinsic to the crime charged."[53] Under *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015), courts regard evidence as intrinsic when it:

- was "inextricably intertwined" with the charged conduct,

---

[53] *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) (quotations omitted).

- occurred within the same time frame as the activity in the conspiracy being charged,
- was a necessary preliminary to the charged conspiracy,
- provided direct proof of the defendant's involvement with the charged crimes,
- was "entirely germane background information, . . . 'directly connected to the factual circumstances of the crime,'" or
- was necessary to provide the jury with background and context of the nature of the defendant's relationship to his accomplice.

Taking up the admissibility of the proceeds evidence with these rules in mind, the court fails, like defendants, to understand the relevancy of "testimony about *all* the money the businesses made."[54] Accordingly, the government's motion to rule this evidence admissible pretrial is denied without prejudice.

Turning to the second category of evidence, the court notes that defendants "take[] no issue with evidence that identifies the various businesses and brand names associated with them;" rather, defendants take issue with the government's characterization of that evidence as proof "that the defendants utilized various account names and business entities because the different Internet sites prohibited them from selling their goods at various times using those names or entities or accounts."[55] This argument about the proper interpretation of evidence, however, is for the jury. As purported by the evidence's proponent, however, the evidence qualifies as "intrinsic" under *Kupfer*. Accordingly, the court grants the government's motion to rule such evidence admissible.

As to the third and fourth categories of evidence—evidence of underpaid mailings and customer complaints—such evidence is intrinsic under *Kupfer*. The evidence is "inextricably intertwined" with the charged conduct and took place within the charged conspiracy's timeframe.[56] The court therefore grants the government's motion to rule such evidence admissible as intrinsic to the crimes charged.

---

[54] Doc. 131, at 2 (emphasis added).

[55] Doc. 131, at 3.

[56] *See Parker*, 553 F.3d at 1314 (admitting as "intrinsic" evidence three uncharged engine sale transactions within the charged engine sale conspiracy timeframe); *United States v. Wilson*, No. 08-450-KHV, 2010 WL 11505685, at *21 (D. Kan. Oct. 14, 2010) (allowing government to use evidence of uncharged transactions during range of dates specified in indictment to prove defendant's scheme to commit mail and wire fraud).

Given that determination, the court denies defendant's motion to exclude evidence of underpaid mailings as improperly noticed under Federal Rule of Evidence 404(b). No such notice was required given the evidence's intrinsic character; and the evidence's character notwithstanding, Doc. 85 afforded defendants reasonable notice of the government's intent to introduce evidence of underpaid mailings.

Defendants nonetheless dispute the evidence's admissibility on alternative grounds. Defendants argue that any testimony about underpaid packages depends on evidence of each package's weight, evidence which allegedly (1) lacks foundation without proof the scale used to weigh the packages was calibrated and accurate, and (2) violates the best evidence rule if not proven by a printout from or photograph of the scale's display result for each package. Defendants also contend that evidence of complaints from customers "may or may not be admissible" under hearsay rules, "[d]epending on the form in which this evidence is introduced."[57] As to defendant's lack of foundation objection, the court simply cannot determine in advance of trial whether the government will lay the proper foundation to establish that the packages at issue were of the weight purported. Similarly, the court cannot predetermine what form the government's customer complaint evidence will take.[58] Accordingly, the court will take up any necessary foundation or hearsay objections to such evidence at trial.

Defendants' best evidence objection, however, can be resolved. Defendants provide no caselaw for the proposition that the best evidence rule requires a printout or photograph of the scale's display for each weighed package. Defendants invite the court to treat this case as "no different than a drug case," where "certain threshold requirements" must be met before admitting testimony about the chemical composition and weight of a controlled substance.[59] But this court's own research has not identified any

---

[57] Doc. 134, at 1.

[58] Worth mention, other courts have held that emails of customer complaints are "properly admitted . . . for the non-hearsay purpose of showing that [defendants] were on notice as to the counterfeit nature of the goods they sold." *See United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013) (cautioning, however, that an accompanying limiting instruction is best practice).

[59] Doc. 131, at. 4.

drug cases where a printout or photograph of the scale used was deemed necessary best evidence of the controlled substance's weight. To the contrary, many drug cases seem to accept testimony about a controlled substance's weight without any printout from or photograph of the scale used.[60]

In its own research, the court finds this situation similar to that decided in *United States v. Donato-Morales*, 382 F.3d 42 (1st Cir. 2004). There, the government charged the defendant with shoplifting a VCR by placing a higher-value VCR in a lower-value VCR box and paying the lower-value VCR's price. The defendant argued that the government violated the best evidence rule by relying on a security officer's testimony about the VCR's price rather than a printout from the scanner used by the officer to determine the price. The First Circuit reasoned: "The best evidence rule applies only to evidence submitted to prove the content of writings, recordings, or photographs. The officer's testimony was not offered to prove the content of the scanner display, but rather the price of the VCR."[61] Similarly, the government is not trying to prove the content of the scale's display per se but rather the weight of packages scaled. The best evidence rule's purpose is, ultimately, "to prevent inaccuracy or fraud."[62] Defendants make no assertion that testimony from the postal inspector about what she saw on the scale's display will be inaccurate, incomplete, or untrustworthy. Even so, defendants will have the opportunity to attack the credibility of the postal inspector's testimony or the reliability of the scale before the jury.[63] And presumably, moreover, the government no longer possesses these packages and so the printout or photograph "original" defendants seek for each package would be otherwise unobtainable and thus not

---

[60] *See, e.g.*, *Missouri v. Dampier*, 862 S.W.2d 366, 373–74 (Mo. Ct. App. 1993) (accepting chemist's and pharmacist's testimony); *Smith v. Indiana*, 829 N.E.2d 64, 76–77 (Ind. Ct. App. 2005) (accepting chemist testimony); *Iowa v. Taylor*, 587 N.W.2d 604, 605–06 (Iowa 1998) (accepting police officer's testimony).

[61] *United States v. Donato-Morales*, 382 F.3d 42, 45 n.2 (1st Cir. 2004).

[62] *United States v. Beltre*, 1999 WL 638605, at *2 (4th Cir. 1999).

[63] *See id.* (affirming admission of testimony about content shown in display window of data memory calculator, in part, because defendant made no argument the testimony was inaccurate or untrustworthy and had "ample opportunity to attack the credibility of [the] testimony or the reliability of the calculator before the jury.").

required under Federal Rule of Evidence 1004(b). In sum, the court overrules defendants' best evidence rule objection to testimony about the packages weight.

## 15. Government's Motion In Limine (Doc. 92)

The court next considers the government's motion in limine, Doc. 92, seeking a ruling to prohibit defendants from introducing emails between defendants and U.S. Postal Service employees. The government argues the emails contain hearsay that defendants cannot admit under Federal Rule of Evidence 801(d)(2)(D)—the rule that allows certain admissions by "a party's agent or employee." The government points to nonbinding authority that suggests only agents or employees of Department of Justice agencies, and so not the U.S. Postal Service, qualify under the rule as statements by an opposing party's employee or agent.[64] Defendants respond that "[i]f the defense offers emails related to postal workers, it will do so in compliance with the Rules of Evidence."[65]

The court agrees that, as a general matter, hearsay statements by U.S. Postal Service employees or agents cannot be admitted against the government in this criminal case under Federal Rule of Evidence 801(d)(2)(D).[66] Still, the court is not positioned at this time to rule any particular evidence inadmissible. Accordingly, the court denies without prejudice the government's motion.

---

[64] *See United States v. Ballou*, 54 F. Supp. 3d 1038, 1073–74 (D. N.M. 2014) (refusing to admit against the government in a criminal case, under Fed. R. Evid. 801(d)(2)(D), statements made by Veteran Affairs employees; also, citing several district court decisions for the proposition that the entire federal government is not the "opposing party" in a criminal case for purposes of Rule 801(d)(2)(D)).

[65] Doc. 130, at 1.

[66] *See, e.g., United States v. Martinez-Saavedra*, 372 F. App'x 463, 464–65 (5th Cir. 2010) ("We have previously declined to apply Rule 801(d)(2)(D) to a statement made by a government agent because the statements of individual agents do not bind the sovereign except in rare circumstances. *See United States v. Garza*, 448 F.3d 294, 298–99 nn.14–16 (5th Cir. 2006)."); *United States v. Prevatte*, 16 F.3d 767, 779 n.9 (7th Cir. 1994) ("[C]ourts faced with this issue have refused to apply [Fed. R. Evid. 801(d)(2)(D)] to government employees testifying in criminal trials based on the rationale that no individual can bind the sovereign."); *United States v. Yildiz*, 355 F.3d 80, 81–82 (2nd Cir. 2004) ("[O]ut-of-court statements of a government informant are not admissible in a criminal trial pursuant to Rule 801(d)(2)(D) as admissions by the agent of a party opponent."); *United States v. Kampiles*, 609 F.2d 1233, 1246 (7th Cir. 1979) (telephone statements made by CIA employee to court reporter are not admissible as admissions of the government since government employees not servants of government for purposes of admissions rule).

The government's final motion in limine, Doc. 114, argues that defendants should be prohibited from introducing five categories of evidence. Characterizing the first three categories of evidence as different forms of an improper jury nullification defense, the government urges the court to exclude any evidence or argument that:

(1)    seeks to place blame on nonparties, like the U.S. Postal Service;[67]

(2)    attacks the investigation through steps not taken, like particular DOJ, FBI, or Postal Inspection Service handbook guidelines not followed;[68] or

(3)    tends to show defendants, independent of the crimes charged, engaged in legitimate business or other lawful acts.[69]

The government further objects—not necessarily to the evidence itself, but—to improper *use* at trial of any evidence or argument that:

(4)    refers to "'FBI 302s' or witness interview reports"[70] not prepared by the witness being questioned.

Finally, for policy reasons aimed at protecting trademark holders, the government requests that the court prohibit any evidence or argument that:

---

[67] *C.f. United States v. Meisel*, 875 F.3d 983, 999 (10th Cir. 2017) ("Evidence tending to show the *commission* by another person *of the crime charged* may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded. . . . [A] district court may properly deny admission of alternative perpetrator evidence that fails to establish, either on its own or in combination with other evidence in the record, a non-speculative 'nexus' between the crime charged and the alleged perpetrator." (quotations omitted)).

[68] *See United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998) ("Admittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the government's investigation may become relevant;" but the relevance of evidence attacking the government's investigation depends on first establishing "the requisite connection between the allegedly 'shoddy' and 'slanted' investigation and any evidence introduced at trial"), *disapproved of on other grounds by Hooks v. Ward*, 184 F.3d 1206 (10th Cir. 1999). *C.f. United States v. Jenks*, 714 F. App'x 894, 897–98 (10th Cir. 2017) (approving limiting instruction that "the government is under no obligation to use all of the investigative methods that are available to it or use any particular method. . . .").

[69] *See United States v. Yarbrough*, 527 F.3d 1092, 1101–02 (10th Cir. 2008) ("[C]haracter evidence is admissible in cases . . . where the sole issue before the jury is whether a defendant undertook his undisputed acts with a prohibited state of mind."). *But c.f. United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) (Fed. R. Evid. 405 "allows proof of character only by reputation and opinion. Accordingly, Rule 405(b) forecloses a defendant from introducing evidence of specific instances of conduct to circumstantially prove their character was inconsistent with criminal intent." Thus, "[r]egardless of how central [defendant] perceives proving his character to be to his defense, his attempt to employ evidence of specific instance of prior conduct"—refusals to accept questionable campaign contributions—"to circumstantially prove his lack of intent to commit state-law bribery is prohibited by Rule 405(b).").

[70] Doc. 114, at 5.

(5)  identifies any of the trademark holders' "confidential, proprietary, or business information that is not necessary to establish whether the good bears a counterfeit trademark and whether the good is authentic."[71]

Generally, defendants respond that granting the government's overbroad requests would unjustifiably exclude relevant evidence and limit their defense. Defendants assure the court that "defense knows the law, including the Rules of Evidence," and will conduct its defense at trial accordingly.[72]

Having reviewed the parties' positions and relevant authority, the court determines that each of the government's proposals requires fact-bound determinations dependent on the character of the evidence introduced at trial. As such, these are not the type of issues that the court can finally determine in a pretrial hearing.[73] Accordingly, the court denies without prejudice the government's motion. These issues will be subject to contemporaneous objection at trial.

—————————————

**IT IS SO ORDERED** that the following motions are <u>denied</u>:

- Defendants' Motion In Limine Regarding The Use Of The Term Counterfeit (Doc. 115)

- Defendants' Motion to Dismiss The Trademark Counts (Doc. 173)

- Defendants Ray and Renata Edwards's Motion To Dismiss Counts 28–42 (Doc. 174)

- Defendants Raymond and Renata Edwards's Motion To Strike Surplusage (Doc. 175)

- Defendants Raymond and Renata Edwards's Motion To Exclude Evidence Of Other Crimes, Wrongs, Or Acts (Doc. 176)

- Joint Motion Of Defendants Raymond and Renata Edwards For Reconsideration Of Motion To Suppress Electronic Information Obtained In Violation Of Fourth Amendment (Doc. 177)

**IT IS FURTHER ORDERED** that the following motions are <u>denied without prejudice</u>:

- Government's Motion In Limine (Doc. 92)

---

[71] Doc. 114, at 5–6.
[72] Doc. 129, at 1.
[73] *See Gonzalez-Perez*, 573 F. App'x at 778 (suggesting that "fact-bound determination[s] dependent upon the character of evidence introduced at trial" are not the type of issues that can be finally decided in a pretrial hearing).

- Government's Consolidated Motions In Limine (Doc. 114)

**IT IS FURTHER ORDERED** that the following motions are <u>denied without prejudice in part</u> <u>and denied in part</u>:

- Defendants' Motion In Limine To Exclude All Evidence Collected, Generated Or Having Any Connection To Deceased Witness (Doc. 116)

**IT IS FURTHER ORDERED** that the following motions and filings requesting pretrial rulings on the admissibility of specific evidence are <u>granted</u>:

- Government's Supplemental Notice Pursuant To Rule 404(b) (Doc. 105)

- Defendants' Joint Motion In Limine And Memorandum In Support To Exclude Reference To Agent Morrow's Death (Doc. 112)

- Government's Motion To Strike Asset $3,467.00 From Second Superseding Indictment (Doc. 167)

**IT IS FURTHER ORDERED** that the following motions and filings requesting pretrial rulings on the admissibility of specific evidence are <u>granted in part and denied without prejudice in part</u>:

- Government's Notice Of Intent To Offer Evidence Pursuant To Federal Rule Of Evidence 902(11), And Motion In Limine To Determine Admissibility Of The Business Records (Doc. 81)

- Government's Motion In Limine, Alternatively, Notice Pursuant To Rule 404(b) (Doc. 85)

- Government's Motion In Limine (Doc. 93)

- Government's Supplement Notice Of Intent To Offer Evidence Pursuant To Federal Rule Of Evidence 902(11), 902(14), And Motion In Limine To Determine Admissibility Of The Business Records (Doc. 183)

Dated this 15th day of October, 2019, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**