## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
                    Plaintiff,

v.                                                      Case No. 16-CR-20070--SRB

RAYMOND EDWARDS
        and
RENATA EDWARDS,
                    Defendants.

## MEMORANDUM AND ORDER

Defendants Raymond and Renata Edwards have been awaiting trial for four years. Defendants now argue that the delay and legal representation they have experienced since this case's July 2016 beginning has violated their statutory and constitutional rights to a speedy trial and their constitutional right to effective assistance of counsel. Because the delay in this case violates the Speedy Trial Act ("STA") but not Defendants' constitutional speedy-trial right, and because, under this case's facts, this violation warrants dismissal without prejudice, the Court grants Defendants' Joint Motion to Dismiss Indictment Due to Violations of Speedy Trial Rights (Doc. 199) and denies as moot Defendants' Joint Motion For Relief Due to Ineffective Assistance of Counsel (Doc. 202).

## I.    Background

Four years ago, the Government indicted Defendants Raymond and Renata Edwards for operating a business that allegedly sold counterfeit goods and defrauded the United States Postal Service ("USPS"). The Government charges that Defendants used counterfeit trademark labels and stickers to traffic "generic" computer batters and adapters as legitimate, while also allegedly

manipulating the actual weight of packages shipped from the business to pay less-than-due postage.  On July 26, 2016, the Court arraigned and conditionally released Defendants.

Since that time, a number of extensions and continuances have delayed trial.

Four extensions occurred before the Court had scheduled any date for trial.  On September 12, October 11, and November 22, 2016, the parties jointly moved to extend pretrial deadlines. The September 12 and October 11 joint motions also requested that the Court continue a scheduled status hearing.  When the Court later rescheduled that status hearing beyond the date covered by the parties' October 11 motion, Defendants' former retained counsel, on November 10, moved to extend the pretrial deadlines to the date of the rescheduled hearing.  Generally, however, the September 12, October 11, and November 22 motions represented that, owing to "unexpected delays in compiling discovery," defense counsel needed additional time to review and discuss with Defendants voluminous discovery.[1]  All four motions also represented that Defendants were "in agreement" with the requests' tolling their STA clock.[2]  In rulings dated September 15, October 13, and November 15 and 29, 2016, the Court granted each of these motions under the STA's ends-of-justice provision.  Combined these rulings excluded from Defendants' speedy trial calculation September 19, 2016, to September 11, 2017, the first trial date.

Defendants' former attorneys then made four continuance requests that resulted in another four trial dates.  On August 7, 2017, defense counsel moved to continue the trial because the timing of certain pending motions, unfulfilled discovery requests, and the trial's start date would "not give the defense an adequate opportunity to put its case together."[3]  At a status conference on February 26, 2018, defense counsel orally moved to continue the trial to permit the parties' more

---

[1] Doc. 15 at 1; Doc. 17 at 1; Doc. 22 at 2.
[2] Doc. 15 at 2; Doc. 17 at 2; Doc. 19 at 2; Doc. 22 at 3.
[3] Doc. 46 at 1–2.

time to exchange expert reports, review discovery, and develop additional facts.  A continuance

motion filed on September 5, 2018, represented that the defense needed "substantial time to

process and analyze" additional evidence that the government was "working to collect and produce

. . . on a rolling basis."[4]  And on January 20, 2019, defense counsel represented that the defense

needed time to seek an expert and to determine whether the parties could accomplish a diversion

"resolution proposal . . . pending with the U.S. Attorneys Office."[5]  Each motion also assured that

Defendants were again prepared to waive their STA rights because "their interest in being able to

fully present their defense trump[ed] their desire to resolve this matter in a more expeditious

fashion."[6]  Each time, again under the STA's ends-of-justice provision, the Court continued the

trial date.  The continuances issued on September 11, 2017; February 26, 2018; September 17,

2018; and January 23, 2019.  Combined, these continuances tolled Defendants' STA clock from

September 11, 2017, to April 8, 2019.

Another three continuances occurred thereafter.  On March 29, 2019, a high volume of

pretrial motions caused the Court  to continue the trial's start date by one week, to April 15, 2019.

A medical emergency involving the spouse of the Government's lead attorney then caused the

Government to move for an ends-of-justice continuance on April 9.  The continuance motion

represented that the emergency would make lead counsel unavailable and, under the

circumstances, irreplaceable by another prosecutor during key portions of the trial.  At a hearing

the next day, the Court granted the motion over Defendants' objection.  Doing so, the Court tolled

Defendants' STA clock from the date of that hearing, April 10, to the new trial date, September

30, 2019.

---

[4] Doc. 73 at 2.
[5] Doc. 90 at 2.
[6] Doc. 46 at 2; Doc. 73 at 2; Doc. 90 at 2; *see also* Doc. 213 at 5–6.

The events leading to the last continuance started at a pretrial hearing held on September 25, 2019.  At that hearing, after hearing argument on several pretrial motions, the then-presiding judge announced that an "unavoidable" issue—termed "court-related obligations" in the minute entry[7]—would require the Court to continue the trial beyond September 30.[8]  The judge proposed a new trial date of November 4, 2019, and allowed the parties a two-day recess to review and coordinate their schedules.  At the follow-up status hearing to determine the new trial date, defense counsel indicated that their earliest availability was not until late May 2020.  Defense counsel maintained that Defendants, therefore, were "placed in a very difficult situation" where Defendants "object[ed] to the fact that this case is being continued at all" but neither "the two [attorneys] that they have put their trust and confidence in for really the last four years" nor "other counsel . . . could be available" and prepared to go to trial on the Court's proposed date.[9]  Addressing the Court directly, Mr. Edwards explained:

> Your Honor, we are not happy about this extension, but we really have no choice. As [defense counsel] had mentioned, we have been working closely with our lawyers for over four years now and it would be impossible to retain new lawyers, not to mention the cost to start over again.
>
> . . . . [W]e find ourselves having to compromise one constitutional right to the speedy trial in order to protect the right to counsel of choice.
>
> So as [defense counsel] has articulated, we object to this but have no choice but to go along with this extension.[10]

Ultimately, the Court continued the trial to May 27, 2020, stating:

> The court on its own did continue the trial setting  . . . until November 4th.  The court also has under advisement pending motions.
>
> The court would find that by setting it on November 4, the court would still be able to have this trial within the speedy trial time.  That was the court's decision and I apologize, again, for defendants feeling this is now a forced response.  And . .  I understand how it's going to be received . . . , but it appears that defendants' counsel

---

[7] Doc. 186 at 2.
[8] Doc. 219 at 41–43.
[9] Doc. 188 at 3–4.
[10] Doc. 188 at 8.

is not available on November 4th and the first availability of defendants' counsel would be in May of 2020.

So that is going to be the continuance of the now scheduled trial date, which was November 4th.  It will now be continued.  And I'm going to use this language and, again, not to upset you, but it's going to be based on the unavailability of defendants' counsel in November.

. . . .

The court is going to find that to not continue [the trial] to [May 27, 2020] would interfere with defendants' right to be adequately represented in their case and also in regards to the circumstances of this case, the length of time its been pending, the different matters the parties' attorneys have brought to the court's attention and have addressed, that it would be a miscarriage of justice to not have this continuance to allow defendants the right to have these attorneys represent them.

The court is also going to find those same reasons to be reasons to stop the running of the speedy trial time until that next court date there as well.[11]

Following this continuance, the parties reconvened for a status hearing on February 5, 2020, to address an apparent disagreement that had developed between Defendants and their counsel.  Sometime before that hearing, Defendants had emailed the then-presiding judge's chambers, indicating their desire that the Court take up a pro se motion raising speedy trial arguments and, possibly, allow them different counsel.  At the hearing, Defendants requested to represent themselves on the speedy-trial and ineffective-assistance-of-counsel motions now before the Court.  In turn, defense counsel orally moved to withdraw.  The Court granted both the withdrawal and the self-representation requests.  Defendants filed their pro se motions the next day, February 6.  Later, when the originally assigned judge retired, the case was reassigned.  A hearing on Defendants' motions occurred June 22.

## II.   Discussion

Defendants' pro se motions place three rights at issue: (1) the right to a speedy trial under the STA; (2) the right to a speedy trial under the Sixth Amendment, and (3) the right to effective

---

[11] Doc. 188 at 9–10; *see also* Doc. 187 at 1–2.

assistance of counsel under the Sixth Amendment.[12]  Of these rights, the Court infringed the first, finds no violation of the second, and, because it must dismiss this case, declines to address the third.

### A.    Speedy Trial Act Violation

Defendants first claim that various extensions and continuances granted in this case have violated their STA rights to a speedy trial.  Defendants' scattershot criticisms seemingly call into question each extension and continuance.  But specifically, Defendants attack the September 15 and October 13, 2016 extensions and the continuances granted on March 29, April 10, and September 25, 2019.  Among other defects, according to Defendants, inadequate ends-of-justice findings accompanied these extensions and continuances; so, none tolled their STA clock.  As a result, Defendants claim, the time to bring them to trial has expired.  With many cases but little supporting analysis, the Government responds that the Court properly excluded these delays under the STA.

"[T]o protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings,"[13] the STA requires that Defendants' trial commence within 70 days after their initial appearance.[14]  Failure to meet that deadline entitles Defendants to dismissal of the charges against them.[15]  The STA, however, excludes from the 70-day period delays due to certain events.

The STA's ends-of-justice exclusion controls the extensions and continuances challenged here.  Under that provision, a court may exclude "delay resulting from a continuance" or from a

---

[12] Because Defendants proceed pro se on these motions, the Court construes their filings "liberally", scrutinizing them "less stringent[ly]" than it would a lawyer-drafted pleading. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the Court does not "assume the role of advocate for [Defendants]." *Id.*
[13] *United States v. Toombs (Toombs I)*, 574 F.3d 1262, 1268 (10th Cir. 2009).
[14] 18 U.S.C. § 3161(c)(1).
[15] *Id.* § 3162(a)(2).

motion to extend the deadline to file pretrial motions, but only if the court finds and makes a supporting record that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."[16]  That ends-of-justice determination involves several considerations, like whether: (1) "the failure to grant such continuance . . . would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice;" (2) "the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation" within the STA's time limits; or (3) if not so unusual or so complex a case, "the failure to grant such a continuance . . . would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."[17]  But no ends-of-justice continuance "shall be granted because of general congestion of the court's calendar."[18]  It is intended to operate only as "a rarely used tool for those cases demanding more flexible treatment."[19]

Particularly important to discouraging "overuse of this narrow exception" is the requirement that a court "make clear on the record its reasons for granting an ends-of-justice continuance."[20]  The record of those reasons must "clearly establish the district court considered the proper factors at the time such a continuance was granted"[21] and demonstrate "why granting the continuance will strike a proper balance between the ends of justice and the best interest of the public and the defendant in a speedy trial."[22]

---

[16] *Id.* § 3161(h)(7)(A); *see also Bloate v. United States*, 559 U.S. 196, 214–15 (2010) (directing that "a district court . . . exclude [pretrial motion] preparation time under subsection (h)(7)").

[17] 18 U.S.C. § 3161(h)(7)(B)(i), (ii), and (iv).

[18] *Id.* § 3161(h)(7)(C).

[19] *Toombs I*, 574 F.3d at 1269.

[20] *Id.*

[21] *Id.*

[22] *United States v. Madkins*, 866 F.3d 1136, 1140 (10th Cir. 2017).

> In considering whether there are sufficient ends-of-justice findings in the record, [the Tenth Circuit has] distinguished between (1) cases where the record "contain[s] an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time" and (2) those where the record contains "only short, conclusory statements lacking in detail." While findings of the former type are generally adequate to satisfy the requirements of the Speedy Trial Act, the latter are not.[23]

These rules in mind, a violation of Defendants' statutory, speedy-trial right is apparent from examining a single continuance: the Court-initiated continuance of the September 30, 2019 trial date.

Less than a week before the September 30, 3019 trial setting, the then-presiding judge announced that "just as a matter of this week, . . . I have to continue our trial" until November 4, owing to something "*unavoidable*."[24]  That hearing's minute sheet reflects that the trial "must be continued for approximately 30 days because of *court-related obligations*."[25]  Having reviewed their schedules, the parties returned two days later to settle the new trial date.  Owing to defense counsels' unavailability, the trial was set for May 27, 2020.  The judge explained this setting with these findings:

> In regards to the continuance itself, . . . the court, again, after much thought and consideration decided it was necessary to continue our trial based on *unforeseen and unavoidable circumstances*. . . .
>
> . . . .
>
> The court would find that by setting it on November 4, the court would still be able to have this trial within the speedy trial time. . . . [B]ut it appears that defendants' counsel is not available on November 4th and the first availability of defendants' counsel would be in May of 2020.
>
> So that is going to be the continuance of the now scheduled trial date, which was November 4th.  It will now be continued.  And I'm going to use this language and, again, not to upset you, but it's going to be based on the unavailability of defendants' counsel in November.
>
> . . . .

---

[23] *Id.* at 1140.
[24] Doc. 219 at 41–43 (emphasis added).
[25] Doc. 186 at 2 (emphasis added).

> The court is going to find that to not continue [the trial] to [May 27, 2020,] would interfere with defendants' right to be adequately represented in their case and also in regards to the circumstances of this case, the length of time its been pending, the different matters the parties' attorneys have brought to the court's attention and have addressed, that it would be a miscarriage of justice to not have this continuance to allow defendants the right to have these attorneys represent them.[26]

Though Defendants objected to this continuance, they "ha[d] no choice but to go along" and "compromise" their speedy-trial right "in order to protect the[ir] right to counsel of choice."[27]

The italicized statements above are the extent of the on-the-record ends-of-justice findings supporting the original decision to move the trial date.  Read together, the judge's statements that "unforeseen and unavoidable" "court-related obligations" made continuing the trial "necessary" are the type of "short, conclusory statements lacking in detail" disapproved of by the Tenth Circuit.[28]  The statements merely identify an event—court-related obligations—and "add[] the conclusory statement that the event requires more time."[29]  The statements lack the necessary "explanation of why the mere occurrence of the event"—court-related obligations—"results in the need for additional time."[30]  That lack of explanation for "court-related obligations" is particularly problematic, given that "[n]o [ends-of-justice] continuance . . . shall be granted because of general congestion of the court's calendar."[31]  Because the judge continued the trial on his own as opposed to a party's motion, moreover, this Court cannot supply the missing explanation from "facts which are obvious and set forth in the motion for continuance itself."[32]

---

[26] Doc. 188 at 6–7, 9–10; *see also* Doc. 187 at 1–2.

[27] Doc. 188 at 8.

[28] *Toombs I*, 574 F.3d at 1271.

[29] *Id.*

[30] *Id.*

[31] 18 U.S.C. § 3161(h)(7)(C); *United States v. Andrews*, 790 F.2d 803, 808 (10th Cir. 1986) ("Neither a congested court calendar nor the press of a judge's other business can excuse delay under the Act."); *United States v. Reese*, 917 F.3d 177, (3rd Cir. 2019) (disapproving of sua sponte continuance granted based on no contemporaneous record but judge's unexplained statement that "I can't try the case until . . . February 22," as that statement omits "any factual findings that demonstrate a 'balanc[ing] of the interests of the public and all the defendants.").

[32] *Toombs I*, 574 F.3d at 1269; *see also United States v Barnes*, 159 F.3d 4, 12–13 (1st Cir. 1998) ("Although we have held that there is no need to articulate the basis facts critical to a motion for a continuance when they are set

Ordinarily, the Court would have an opportunity to supplement earlier findings. While not "the preferred practice . . . , findings made contemporaneously with the granting of the continuance may be entered on the record after the fact if done before the court rules on a defendant's motion to dismiss."[33] But cases approving a district judge's retroactively entered but not made findings typically involve a single district court judge.[34] And as *this judge* made no findings "contemporaneous[] with the granting of the continuance," it is not positioned to enter any contemporaneously-made findings. Its findings would necessarily be retrospective, speculative, and therefore prohibited.[35] As such, the record fails to "clearly establish [the judge] considered the proper factors"—and "struck the proper balance,"[36]—"at the time such a continuance was granted."[37]

---

forth in the motion papers, here, no one moved to continue the trial. Consequently, we cannot say with any reasonable certainty that the continuance met the ends of justice standard.").

[33] *Toombs I*, 574 F.3d at 1269.

[34] *See, e.g.*, *United States v. Johnson*, No. 92-8054, 1993 WL 230124, at *3 (10th Cir. June 23, 1993) (unpublished) (approving ends-of-justice continuance based on trial judge's retroactive explanation, when denying the defendant's motion to dismiss, that "this Judge's medical emergency provided no alternative but to reset the defendant's trial").

[35] *See United States v. Larson*, 627 F.3d 1198, 1204 (10th Cir. 2010) ("These [ends-of-justice] findings may be entered on the record after the fact, but they may not be *made* after the fact." (emphasis in original)); *United States v. Doran*, 882 F.2d 1511, 1514–18 (10th Cir. 1989) (disapproving of court entering retroactive findings at time of motion to dismiss where the record provided "no evidence that the court considered the proper factors at the time it granted the continuance," and so the situation was "analogous to cases holding a trial court's findings inadequate as rationalizations of orders that did not contemplate [the speedy trial act's ends-of-justice provision] when they were made."); *United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir. 1993) ("[T]he magistrate judges' failure to make 'ends of justice' findings at each continuance precludes an examining court from justifying the continuances retroactively."); *United States v. Pasquale*, 25 F.3d 948, 952 (10th Cir. 1994) ("In this case, the two minute orders granting the continuance make no ends of justice findings. Although the nunc pro tunc order quotes the judge's [earlier] letter to defense counsel . . . , noting [possible findings], that letter is not included in the record. On the record before us, we hold that . . . since no ends of justice findings were made, the entire delay was not properly excluded."); *United States v. Johnson*, 120 F.3d 1107, 1111 (10th Cir. 1997) (refusing, under *Doran*, to accept post hoc ends-of-justice findings where, "at the time the court granted the ends-of-justice continuance in this case, the only factor it [expressly] relied on, or even mentioned, was its calendar.").

The Court notes that, on September 30, 2019, the trial's former start date, the Tenth Circuit's Judicial Council published an order publicly reprimanding this case's original judge for misconduct. This Court could point to the Tenth Circuit's reprimand decision as something "that conceivably could have been relevant to [the judge's] ends-of-justice determination," but whether the judge had that reprimand in mind and how that reprimand created "court-related obligations" that outweighed the Defendants' and public's interest in a speedy trial is still, on this record, "far from 'obvious.'" *Larson*, 627 F.3d at 1206. And to find otherwise would require this judge to engage in unauthorized retrospective speculation.

[36] *Larson*, 627 F.3d at 1204.

[37] *Toombs I*, 574 F.3d. at 1269.

-10-

The only remaining question is whether findings regarding defense counsels' unavailability cured any portion of the continuance.  In this Court's view, they did not.

Here, the judge stopped the running of speedy trial on his own motion without a proper finding.  The judge then unilaterally announced a date for the new trial setting that effectively compelled Defendants to choose between their statutory right to a speedy trial or their Sixth Amendment right to counsel.[38]  While forcing a defendant to choose between a statutory right and constitutional right arguably involves no *Simmons* violation,[39] "the element of coerced choice decried by the Court in *Simmons* is nevertheless present here."[40]  When Defendants objected to any continuance but nonetheless refused to go to trial without their chosen counsel, the trial judge effectively forced Defendants to accept a 240-day delay in their trial's start date.  Their choice was coerced, not strategic like the prior continuances they had sought.[41]  That coerced choice might have been more tolerable had an STA-approved reason backed the initial continuance. But the judge put Defendants in that position for no apparent STA-approved reason; and so, the judge— not any counterbalancing end of justice—caused the delay associated with defense counsels'

---

[38] As explained below, Defendants establish no violation of their constitutional speedy-trial right.  Thus, this characterization more accurately represents the dilemma Defendants faced.  That said, the STA "codifies th[e Sixth Amendment speedy-trial] right." *Madkins*, 866 F.3d at 1139.  And, in that sense, though not a trade-off involving a constitutional entitlement itself, a trade-off involving its protections is arguably more significant than some other statutory-based trade-offs.

[39] *See Simmons v. United States*, 390 U.S. 377, 394 (1968) (finding it "intolerable" that a criminal defendant ever be obliged to surrender "one *constitutional* right . . . in order to assert another." (emphasis added)); *United States v. Ashimi*, 932 F.2d 643, 647–48 (7th Cir. 1991) ("*Simmons* does not apply, however, when a defendant is made to choose between a constitutional benefit and a statutory benefit."); *Stuard v. Stewart*, 401 F.3d 1064, 1068–69 (9th Cir. 2005) ("Not all choices are Catch-22s.  A compulsion to choose between two advantages, where the compulsion does not force the defendant to forfeit any constitutional entitlements, is not contrary to . . . *Simmons*").

[40] *Hunt v. Mitchell*, 261 F.3d 575, 584 (6th Cir. 2001).

[41] *But see United States v. Wilks*, 629 F.2d 669, 672 (10th Cir. 1980) (deciding that "[t]he necessity of choosing between holding the government to the exact time limits of the Speedy Trial Act and requesting time to prepare a defense does not . . . create the sort of trade-off of constitutional rights denounced by *Simmons*," as "the facts of th[e] case" showed that defendant "made a strategic choice to seek a dismissal under the Speedy Trial Act rather than seek a continuance.")

unavailability.[42]  As such, no portion of the continuance outweighed the best interest of Defendants and the public in a speedy trial.

Because 113 nonexcludable days[43] have passed under this unjustified 240-day continuance, Defendants have not been tried within the STA's 70-day limit.  As such, § 3162(a)(2) directs the Court to dismiss the indictment.  "Because a district court has discretion to dismiss the case with or without prejudice upon a Speedy Trial Act violation," however, the Court next considers Defendants' "Sixth Amendment speedy trial claim, which, if successful, would require the district court to dismiss the case with prejudice."[44]

## B.  No Constitutional Speedy Trial Violation

The Sixth Amendment guarantees Defendants the right to a "speedy and public trial."[45] Determining whether the delay in this case violates that right involves analyzing: "1) the length of the delay, 2) the reason for the delay, 3) the defendant[s'] assertion of—or failure to assert—[their] right, and 4) any prejudice to defendant[s]."[46]  Though the length of delay "functions as a triggering mechanism" for reviewing the other factors, no one factor alone is "necessary or sufficient to conclude a violation has occurred."[47]   Instead, when the period of delay is "presumptively prejudicial," the Court must consider the factors "together along with other relevant circumstances."[48]

---

[42] *Cf. Zedner v. United States*, 547 U.S. 489, 508 (2006) ("[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted….").

[43] In making this calculation, the Court excludes two periods: (1) the 16-day period from and including the at-issue trial date (September 30, 2019) to and including the date the Court ruled on motions it had taken under advisement (October 15, 2019); and (2) the period from and including the date Defendants' moved to represent themselves and subsequently filed these motions (February 5, 2020) to the present.  These periods are automatically excludable under 18 U.S.C. § 3161(h)(1)(D) and (H).  *See United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014).

[44] *Toombs I*, 574 F.3d. at 1274.

[45] U.S. Const. amemd. VI.

[46] *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[47] *Toombs I*, 574 F.3d. at 1274.

[48] *Id.*

### 1. Length of Delay

This factor is undisputed. "Delays approaching one year generally satisfy the requirement of presumptive prejudice."[49] Having already faced a more-than-one-year delay from their July 7, 2016 original indictment date, the length-of-delay factor "weighs entirely in [Defendants'] favor."[50]

### 2. Reason for Delay

This factor requires the Court to assess who bears responsibility for Defendants' delayed trial. Delay weighs against the Government "in proportion to the degree to which the government"—including the Court—"caused the delay."[51] "Purposeful delay or delay to gain advantage weighs heavily against the government," while a "more neutral reason such as negligence or overcrowded courts" weighs "less heavily."[52] In contrast, continuances and other motions filed by Defendants weigh "against the government not at all."[53] Instead, if these or other of Defendants' "own actions" primarily caused the delay, this factor "weighs heavily against" Defendants.[54]

In this case, the reasons for the delay weigh more heavily against Defendants than the Government.

The Court and the Government no doubt bear responsibility for the March 29, April 10, and September 25, 2019 continuances. At most, these continuances delayed trial from April 8, 2019, to May 25, 2020. But these continuances involved no deliberate misconduct. The March 29 continuance taken to allow the Court additional time to review a high volume of pretrial motions

---

[49] *Batie*, 433 F.3d at 1290.
[50] *Margheim*, 770 F.3d at 1326.
[51] *Batie*, 433 F.3d at 1291.
[52] *Margheim*, 770 F.3d at 1326.
[53] *Batie*, 433 F.3d at 1291.
[54] *Margheim*, 770 F.3d at 1326.

filed by the parties' and the September 25 continuance taken for unavoidable, court-related obligations involve the type of "more neutral" explanations that "weigh[] less heavily."[55]   A "legitimate" basis, moreover, supports the April 10 continuance taken due to a medical emergency involving the spouse of the Government's lead prosecutor.[56] So, none of these continuances weigh heavily against the Government.

In contrast, Defendants contributed over twice as much delay. Defendants jointly or unilaterally requested the other four extensions and four continuances that delayed trial from September 2016 to April 2019.[57] Defendants, however, make two arguments for reattributing responsibility for this delay.

First, Defendants argue that the Court should not hold against them the delay associated with the September 12 and October 11, 2016 extensions and the Government's April 9, 2019 continuance motion, because defense counsel allegedly acted on those occasions without their informed consent. But "delays caused by defense counsel are properly attributed to [Defendants];" so, responsibility for defense counsels' extensions also belongs to Defendants.[58] And, the Court has already weighed the delay resulting from Government's April 9 continuance request entirely against the Government; so, the fact that defense counsel had conflicts with earlier proposed dates for rescheduling the trial following that request weighs not at all against Defendants.

---

[55] *Id.*

[56] *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) (weighing "the government's legitimate request for a continuance" "due to the poor health of one of its counsel" less heavily than the defendant's three continuance requests; "Even if there were other counsel available, such a claim is insufficient to establish that the prosecution was unfairly abusing the system to gain an advantage.").

[57] *See Batie*, 433 F.3d at 1291 ("Roughly eight months, or nearly half of the delay of which [defendant] complains was consumed by defendant's motions for continuances (one of which was joint) . . . , and this period weighs against the government not at all.").

[58] *Vermont v. Brillon*, 556 U.S. 81, 90–91, 94 (2009) ("Because 'the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation,' delay caused by the defendant's counsel is also charged against the defendant.  The same principle applied whether counsel is privately retained or publicly assigned. . . .").

Second, Defendants argue that the Government repeatedly delayed or withheld items from discovery production, forcing defense counsel to seek various extensions and continuances. Yet, Defendants fail to establish that the Government purposefully timed its disclosures to delay the case or gain an advantage over the defense.[59]   Indeed, as the Government indicates, it produced many of the rounds of discovery "in direct response to [defense] request[s] for additional information."[60]   And the *Brady/Giglio* violations Defendants allege are undercut by their conclusory nature and the fact that they seemingly identify only nonexculpatory material.[61]   That said, the Court cannot ignore the obvious role discovery has played in the extensions and continuances sought in this case. But again, the Court attributes any discovery-based delay not to intentional or neglectful conduct but simply to the complexity of the charges, defenses, and evidence at issue in this case.   As such, while the Court still attributes the primary cause of delay in this case to Defendants, it weighs that delay only moderately, not "heavily", against Defendants.[62]

### 3.    Assertion of Right

This "[p]erhaps most important"[63] factor receives "strong evidentiary weight."[64]   It assesses "whether the defendant[s'] behavior during the course of the litigation evinces a desire to go to trial with dispatch."[65]   The Court weighs "the frequency and force" of Defendants' delay-

---

[59] To the extent Defendants also claim the Government's discovery practices amount to an independent due process violation, that claim stalls for the same failure to demonstrate "intentional and purposeful" prosecutorial misconduct. *See Batie*, 433 F.3d at 1293 (suggesting that, in the context of post-indictment delay, "a dismissal on substantive due process grounds requires both prosecutorial misconduct and substantial prejudice.").

[60] Doc. 209 at 19–20.

[61] Below, the Court's prejudice-factor analysis discusses this evidence when addressing Special Agent Morrow's emails.

[62] *Margheim*, 770 F.3d at 1326.

[63] *Batie*, 433 F.3d at 1291.

[64] *Toombs I*, 574 F.3d at 1274.

[65] *Batie*, 433 F.3d at 1291.

based objections[66]  But repeated continuance requests or other actions inconsistent with swiftly resolving the case "tip the balance of this factor 'heavily against the defendant[s].'"[67]

Here, this all-important factor weighs against Defendants.  The delay in this case passed without objection from Defendants until the April 10, 2019 hearing.  Defendants have objected to any delay from that point forward.  That Defendants deliberately abandoned their retained counsel in order to pursue this motion more immediately, moreover, adds some force to their claimed desire to assert and protect their speedy-trial right.  But "it is difficult to overlook how late [Defendants' assertions] appear on the pretrial timeline."[68]  The numerous extensions and continuances Defendants requested prior to April 10, 2019, "scarcely demonstrate a desire for a speedier process."[69]  Thus, the assertion-of-right factor weighs against Defendants.

### 4.    Prejudice

This final factor considers the extent to which the delay has prejudiced Defendants. "[E]xtreme delay" creates a presumption of prejudice.[70]  This case's four-year delay, however, leaves Defendants two years short of being able to rely on that presumption.[71]  Thus, Defendants must affirmatively prove particularized prejudice.[72]  Failure to do so "will eviscerate [their] claim."[73]

Courts assess the required particularized showing of prejudice by "focusing on the interests the speedy-trial right was designed to safeguard: (1) 'prevent[ing] oppressive pretrial incarceration'; (2) 'minimiz[ing] anxiety and concern of the accused'; and (3) 'limit[ing] the

---

[66] *Margheim*, 770 F.3d at 1328.

[67] *Id.*

[68] *Id.*

[69] *Batie*, 433 F.3d at 1292.

[70] *Toombs I*, 574 F.3d at 1275 (discussing *Doggett v. United States*, 505 U.S. 647, 655 (1992)).

[71] *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014) ("Generally, the court requires a delay of six years before allowing the delay itself to constitute prejudice.").

[72] *Margheim*, 770 F.3d at 1329.

[73] *Id.*

possibility that the defense will be impaired.'"[74]  The impairment-of-the-defense interest is "most important."[75]   The prevention-of-oppressive-pretrial-incarceration interest is "second most important."[76]  Here, where Defendants have never been detained while awaiting trial,  that "second most important" interest lends Defendants no support.[77]  So, for the prejudice factor to favor Defendants, Defendants must make a particularized showing that the delay either unduly exacerbated their pretrial anxiety and concern or impaired their defense.

With respect to minimizing Defendants' anxiety and concern, Defendants, of course, have been "prejudiced to some extent by living for over four years under a cloud of suspicion and anxiety." [78]  Defendants argue the delay in resolving this case: (1) has denied them "multiple lucrative job offers;" (2) has forced them to "move twice in search of employment," causing additional "heavy expenses" associated with "defending a case that is halfway across the country;" (3) restricts their ability to travel freely "to tend to family matters" in "their home country;" and (4) jeopardizes the outcome of their impending visa renewal.[79]  But these harms are predominately, if not entirely, attributable to the charges as opposed to any delay itself.   None of these harms differ from those that would be experienced by any other similarly-situated arrestee awaiting trial.[80]  And the fact that Defendants tolerated or risked these concerns without any delay-based

---

[74] *Id.* (quoting *Barker*, 407 U.S. at 532).

[75] *Banks*, 761 F.3d at 1184.

[76] *Id.*

[77] *Id.* ("Here, Defendants were not detained before trial, so the oppressive-pretrial-incarceration interest is of no assistance to them.").

[78] *Barker*, 407 U.S. at 533–34  ("[E]ven if an accused is not incarcerated, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.")

[79] Doc. 200 at 26; *see also* Doc. 221 at 18.

[80] *United States v. Frias*, 893 F.3d 1268, 1273 (10th Cir. 2018) ("Under our precedent, [defendant] must show 'some special harm which distinguishes [her] case.'  This harm must be different than 'any other arrestee awaiting trial.'"); *see also Margheim*, 770 F.3d at 1330.

objection for nearly three years somewhat undercuts their claimed anxiety and distress.[81]  At best, therefore, the anxiety-and-concern interest adds nominal weight to the prejudice calculus.

As to the "most important" impairment-of-the-defense interest, Defendants make the right claims but without the required showings.  "Impairment of the defense can come in several forms, including lost witnesses [and] lost evidence."[82]  Here, Defendants claim both.  They argue that the delay has deprived their defense of:

(1) testimony from three of their former employees who "would have been able to shed light on the operations the business but have since moved out of the area and have been difficult to locate given the passage of time;"[83]

(2) the opportunity to confront the "primary case agent," Special Agent Melissa Morrow—who passed away from cancer during the pendency of this case without Defendants receiving an opportunity to preserve her testimony[84]—about matters like:

- "false testimony" she provided to the grand jury; [85] and
- several purported emails she wrote to the Government, where she allegedly
  - admitted to "not having enough evidence to seize all the assets,"[86] and
  - demonstrated her mistaken understanding of 18 U.S.C. § 2320(a)'s requirements by claiming to "have no way of knowing which items [Defendants' business sold through its Amazon account] were counterfeit and which were authentic, but . . . regardless of authenticity, he was not authorized to sell items from any of the venders;"[87]

---

[81] *See United States v. Netterville*, 553 F.2d 903, 916 (5th Cir. 1977) ("[Defendant] claims to have lost his job and to have been unable to secure another; to have suffered severe financial hardship; and to have experienced severe family problems as a result of his indictment.  These are complaints of the sort 'present to some degree in virtually every case' and do not necessarily amount to actual prejudice, because they are the result of the indictment itself and not of the delay which followed the indictment.  Prejudice may accrue when such suffering is 'extended' by delay.  [Defendant's] tardiness and lack of vigor in asserting his speedy trial right, however, are inconsistent with his present complaints.  His long silence 'suggests that any hardships he suffered were either minimal or caused by other factors.'").

[82] *United States v. Medina*, 918 F.3d 774, 781 (10th Cir. 2019).

[83] Doc. 200 at 25.

[84] Notably, the Court has already addressed efforts to exclude all evidence connected with Agent Morrow, including efforts based on arguments that: (1) such evidence violates Defendants' confrontation rights; and (2) by doing nothing to convey Agent Morrow's terminal health condition, the Government deprived Defendants of the opportunity to preserve her testimony and, thereby, exercise their rights to present a defense by compelling witnesses in their favor. *See* Doc. 190 at 11–15.

[85] Doc. 200 at 25.

[86] Doc. 200 at 25.

[87] Doc. 221 at 20.  As best it can tell, the Court already addressed the legal argument underlying Defendants' position when it dismissed Defendants' Motion to Dismiss the Trademark Counts (Doc. 173). *See* Doc. 190 at 1–5.

(3) "critical emails"[88]—lost through the routine operation of the USPS's email retention policy[89]—that "would demonstrate that the postal service confirmed that [Defendants'] business was shipping properly" and calibration records "that could verify" the weight measurements underlying the mail fraud charges;[90] and

(4) testimony from the Postal Investigator responsible for the weight measurements underlying the mail fraud charges but "who is since retired."[91]

But to prove particularized prejudice from these evidentiary losses, Defendants must: (1) "demonstrate with specificity how the evidence would have aided [their] defense;" (2) establish "the Government's delay in bringing [them] to trial caused the evidence to be actually lost;" and (3) show they "took affirmative steps to preserve the evidence."[92] Each of Defendants' lost witness and evidence claims lacks one or more of these showings.

As to the claimed loss of testimony from Defendants' former employees, all three showings are missing. Defendants fail to "state with particularity what exculpatory testimony would have been offered."[93] They have not shown that witnesses moved during the period of Government-caused delay, as opposed to their own delay. Though "difficult to locate," the witnesses do not appear to be "actually irretrievable for trial."[94] And Defendants have not explained what, if any, efforts they have undertaken to locate these witnesses both prior to and after their relocating.[95]

Much of the same issues undercut the claimed loss of the Postal Investigator's testimony. Defendants have not shown the Postal Investigator retired during this case's period of Government-caused delay. It is unclear how retirement makes the Postal Investigator "actually

---

[88] Doc. 221 at 10.

[89] *See* Doc. 219 at 23–25.

[90] Doc. 200 at 25. This evidence also seems to have been the subject of an earlier in limine ruling, which adds some context for Defendants' claim. *See* Doc. 190 at 5–8, 23–26.

[91] Doc. 200 at 25. This evidence too seems the subject of a prior in limine ruling that contextualizes Defendants' claim. *See* Doc. 190 at 23–24.

[92] *Medina*, 918 F.3d at 781–82.

[93] *Id.*

[94] *Id.*

[95] *Id.*

irretrievable for trial."[96]  And Defendants have not explained what, if any, steps they have taken to secure the Postal Investigator's testimony for trial.[97]

Concerning Special Agent Morrow's testimony, the specificity and causation showings are missing.  Defendants proffer either "[v]ague and conclusory"[98] or nonexculpatory testimony.  The unexplained assertion that Defendants could have cross-examined Morrow about "false testimony" shows only "hazy" and "speculative" as opposed to "definite" prejudice.[99]  The other hypothetical matters Defendants identify pertain primarily to the lawfulness of the searches and seizures that occurred in this case.  As such, the evidence is immaterial to Defendants' guilt or innocence and so not "vital to [Defendants'] defense."[100]  As the Court noted in an earlier order addressing Defendants' efforts to suppress statements from Agent Morrow, moreover, her "death makes presenting the government's case against defendants more difficult.  The Government now may not introduce any of [its lead case agent's] out-of-court statements to prove the truth of the matter asserted."[101]  Additionally, Special Agent Morrow passed away on March 22, 2018,[102] during the period covered by Defendants' first continuance request and over a year before any Government-

---

[96] *Id.*

[97] *Id.*

[98] *Abdush-Shakur*, 465 F.3d at 464, 466 ("Vague and conclusory allegations of prejudice resulting from the passage of time and absence of witnesses are insufficient to constitute a showing of actual prejudice.").

[99] *Margheim*, 770 F.3d at 1331.  Though Defendants specify no particular "false" testimony, it is worth noting that the Court has seen and rejected a particular defense argument that the grand jury received false testimony. *See* Doc. 190 at 5–8.

[100] *Id.* at 1330 (rejecting similar claim concerning "hypothetical testimony [that] pertained only to [defendant's] withdrawn motion to suppress"); *c.f. United States v. Dahl*, 597 F. App'x 489, 491 n.2 (10th Cir. 2015) ("Moreover, … we note that [defendant's] proposed use of the evidence is in a hypothetical suppression hearing. . . .  And '[s]uppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is material to either guilt or punishment."); *United States v. Lee Vang Lor*, 706 F.3d 1252, 1259 (10th Cir. 2013) ("A defendant is not deprived of a full and fair opportunity to litigate simply because he does not discover all potentially relevant evidence until after his suppression hearing."); *United States v. DeLeon*, 426 F.Supp.3d 1034, 1061 (D.N.M. 2019) ("*Brady* does not require the United States to disclose impeachment evidence before suppression hearings.").

[101] Doc. 190 at 13–14. *See Batie*, 433 F.3d at 1292 (refusing to find prejudice where the claimed evidentiary loss "benefits, rather than prejudices, a defendant's case.")

[102] Doc. 216 at 21.

caused delay began.[103]  So, to the extent delay played a role in Special Agent Morrow's unavailability, Defendants' delay caused that unavailability.[104]

Similar issues undermine Defendants' claim concerning the USPS emails and calibration records.  To the extent exculpatory emails passed between the USPS and Defendants, Defendants offer no explanation why they failed to preserve or are unable to recover those communications without the USPS' assistance.[105]  The exculpatory value of the calibration records is entirely speculative.  And there is no reason to believe an effective cross-examination or objection at trial will be inadequate to attack the Government's weight measurements.[106]  Indeed, the lack of any calibration records arguably advantages the defense by making the reliability of the Government's weight measurements more, not less, open to question.[107]

Without any affirmative, particularized showing that Government-caused delay impaired their defense, therefore, Defendants are left with only the nominal showing that this case's delay has exacerbated their pretrial anxiety and concern.  This slight showing of prejudice weighs only lightly in Defendants' favor.

### 5.   Factors Balanced

Here, therefore, is where Defendants' constitutional speedy-trial claim stands.  Four, pretrial years have passed since the Government indicted Defendants.  The length-of-delay factor

---

[103] *But see Jackson v. Ray*, 390 F.3d 1254, 1262, 1265 (10th Cir. 2004) ("[Defendant] could have used [the deceased witness'] testimony if his trial had proceeded in a timely manner" rather than the delayed manner caused by the State's negligence).

[104] *See Toombs I*, 574 F.3d at 1275–76 (refusing to find actual prejudice in an analogous, inverse scenario where defendant strengthened the government's case by filing multiple continuance motions that "provided the government . . . the time it needed" to "locate and produce the testimony of . . . the primary witness against" defendant).

[105] *See Medina*, 918 F.3d at 790–91 ("[J]ust because information stored in multiple places is not available from one source does not mean it is not available from any source;" so, though defendant lost access to alleged alibi evidence on his cell phone, his failure to show "the evidence was unavailable from other sources" meant he "c[ould not] establish prejudice from the loss").

[106] *See Batie*, 433 F.3d at 1292 (refusing to find prejudice where defendant "could . . . effectively expose[] during cross-examination" any delay-caused changes in testimony).

[107] *See id.* (refusing to find prejudice where the claimed evidentiary loss "benefits, rather than prejudices, a defendant's case.")

"weighs entirely in [Defendants'] favor."[108]   And over that length of time, Defendants have experienced "a cloud of suspicion and anxiety"[109] that adds slight weight to their claim.  But these considerations are outweighed.  Defendants delayed this case over twice as long as the Court or the Government.  Their first objection to the case's delayed progress came nearly three years in. Defendants have not been under incarceration.   And from what they provide the Court, no government-caused delay has hindered their ability to defend against the Government's charges. On balance, therefore, Defendants establish no violation of their Sixth Amendment right to a speedy trial.

## C.   Dismissal Without Prejudice

That lack of a constitutional speedy-trial violation means this Court must now decide whether the aforementioned STA violation requires dismissal with or without prejudice.  Four nonexclusive factors influence that decision: (1) "the seriousness of the offense;" (2) "the facts and circumstances of the case which led to the dismissal;" (3) "the impact of reprosecution on the administration of [the STA] and on the administration of justice;"[110] and (4) any prejudice to the Defendants.[111]  Applying those factors here, the Court determines that this case lacks the sort of "more egregious violation" to justify a with-prejudice dismissal.[112]

### 1.   Seriousness of Charged Offenses

The Court first considers the seriousness of Defendants' alleged crimes.  In total, the Government has charged Defendants with 42 crimes: 27 violations of 18 U.S.C. § 2320(a) (the statute criminalizing trafficking in counterfeit goods) and 15 violations of 18 U.S.C. § 1341 (the

---

[108] *Margheim*, 770 F.3d at 1326.
[109] *Barker*, 407 U.S. at 533–34.
[110] 18 U.S.C. § 3162(a)(2).
[111] *Abdush-Shakur*, 465 F.3d at 462 ("Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider.").
[112] *Id.* ("[T]he application of the more serve sanction of dismissal with prejudice . . . should be reserved for more egregious violations.")

statute criminalizing mail fraud).   Defendants claim this factor favors them because these nonviolent offenses are, in their view, "civil matters at best."[113]   They argue that offended trademark holders may pursue any claims under trademark law and the USPS may pursue any underpaid-postage claims under the False Claims Act.   But the Court measures the seriousness of these offenses, not by "the evidence against a defendant" and what other causes of action that evidence might allow; it measures the charged offenses' seriousness "by considering the length of sentence Congress has adopted for th[e] offense[s]."[114]   As charged, Congress has authorized a 10-year maximum imprisonment sentence for violating § 2320(a)[115] and a 20-year maximum imprisonment sentence for violating § 1341.[116]   These penalties convince the Court that Defendants' offenses are indeed serious enough that "this factor weighs in favor of dismissing without prejudice."[117]

## 2.    Facts and Circumstances Leading to Dismissal

The second statutory factor considers the "culpability of the delay-producing conduct."[118] Delay resulting from "intentional dilatory conduct, or a pattern of neglect" on the Government's part favors dismissal with prejudice.[119]   Conversely, Defendants' claim to a with-prejudice dismissal weakens in proportion to their passivity and "responsibility for the failure to meet the timely trial schedule."[120]

Here, the same reasons the Court weighed the reason-for-delay factor against Defendants' constitutional speedy-trial claim support weighing this factor in favor of permitting reprosecution.

---

[113] Doc. 200 at 24; *see also* Doc. 221 at 12–14.
[114] *United States v. Koerber*, 813 F.3d 1262, 1275–77 (10th Cir. 2016).
[115] 18 U.S.C. § 2320(b)(1)(A); *see also* Doc. 166 at 15.
[116] 18 U.S.C. § 1341; *see also* Doc. 166 at 15.
[117] *Koerber*, 813 F.3d at 1275.
[118] *Saltzman*, 984 F.2d at 1093.
[119] *Id*. at 1094.
[120] *Koerber*, 813 F.3d at 1287.

Notwithstanding Defendants' unsupported discovery-based assertions, the Government intentionally delayed this case only once, with its April 9, 2019 continuance request.  That delay involved neither "dilatory conduct, [n]or a pattern of neglect;" nor did it cause the STA violation in this case.  The Court alone bears responsibility for that violation.  But that violation, "by itself, is not a sufficient basis for dismissal with prejudice."[121]  At most, it involved an isolated incident of negligence.  And even at that, nearly three of this case's four pretrial years passed without trial so Defendants could build the defense—and, at one point, pursue a diversion that—they desired.[122] These facts support a without-prejudice dismissal.

### 3.   Impact of Reprosecution
-and-
### 4.   Prejudice

These last, interrelated factors require the Court to evaluate: whether the Government-caused delay "was intentional;" whether Defendants suffered "prejudice . . . from the Act's violation;" and the "length of delay."[123]

As discussed, no untoward intent motivated the Government-caused delay in this case. Rather, the Government's continuance motion "had a legitimate, good faith justification."[124]  "In the absence of bad faith or a pattern of neglect by the prosecution, [the Court] fail[s] to see how the delays, the majority of which were not caused by the government, substantially impact the administration of justice."[125] Indeed, in a case such as this, "[w]here the delay caused by the

---

[121] *Abdush-Shakur*, 465 F.3d at 462.
[122] *Saltzman*, 984 F.2d at 1093 (weighing facts-and-circumstances factor against dismissal with prejudice where "the Defendant disregarded his [STA] rights in an effort to . . . gain [other] advantage[s]").
[123] *Koerber*, 813 F.3d at 1285.
[124] *United States v. Toombs (Toombs II)*, 713 F.3d 1273, 1280 (10th Cir. 2013).
[125] *United States v. Artez*, 290 F. App'x 203, 207 (10th Cir. 2008).

government is unintentional and the district court takes it upon itself to share in the blame for the delay, the administration of justice is not served by dismissal with prejudice."[126]

The same reasons the Court weighed the prejudice factor only slightly in favor of Defendants' constitutional speedy-trial claim, moreover, support ultimately balancing this factor in favor of permitting reprosecution. Four years is not so short a time as to leave Defendants only insubstantially burdened.[127]   But the weight of that consideration is lessened here.   The Government "lack[s] responsibility for many of the delays" that protracted this case.[128] Throughout this case's duration, Defendants have been under release, not incarceration.[129]   Many of Defendants' claimed hardships result not from any government-caused delay but from the indictment's filing itself.[130] And despite Defendants mostly "bald allegations" of evidentiary losses,[131] Defendants establish no actual "specific prejudice"[132] to their trial defense "caused by" the Court's invalid continuance.[133]

###   5.   Factors Balanced

Ultimately, in applying these factors, the Court's aim is "to promote compliance with the [STA] without needlessly subverting important criminal prosecutions."[134]   Here, where only the

---

[126] *Abdush-Shakur*, 465 F.3d at 463–64; *see also Toombs II*, 713 F.3d at 1281 (affirming decision to dismiss without prejudice where district court "share[d] in the blame" for the substantial delay and determined neither party "attempted to abuse the [STA]").

[127] *See Artez*, 209 F. App'x at 207 ("We are sympathetic to the hardships defendants face from prolonged prosecutions, *see* [*United States v. Taylor*, 487 U.S. 326, 340–41 (1988)]. . . .").

[128] *Id.* ("We do not doubt that the long prosecution was expensive to defend, but the weight of this factor is lessened by the government's lack of responsibility for many of the delays.").

[129] *See Id.* ("We do not doubt that the long prosecution was expensive to defend, but the weight of this factor is lessened by . . . [the fact defendant] was only incarcerated for three days during the pendency of the cases."); *Abdush-Shakur*, 465 F.3d at 464 (finding "no evidence of sufficient prejudice" where "any delay did not affect the amount of time [defendant] spent confined.").

[130] *Saltzman*, 984 F.2d at 1094–95 ("[T]he defendant has a burden under the Act to show specific prejudice other than that occasion by the original filing.").

[131] *Abdush-Shakur*, 465 F.3d at 464 ("There is no evidence 'the defendant . . . lost a *crucial* witness' because of the delay, nor did he offer any evidence as to how the absence of this witness testimony prejudiced his case.").

[132] *Saltzman*, 984 F.2d at 1094–95 ("[T]he defendant has a burden under the Act to show specific prejudice").

[133] *United States v. Williams*, 576 F.3d 1149, 1159 (10th Cir. 2009) ("[T]he prejudice that a defendant must establish to seek a dismissal with prejudice for a [STA] violation must be *caused by that violation*." (emphasis added)).

[134] *Zedner*, 547 U.S. at 499.

length of delay weighs somewhat in Defendants' favor, a with-prejudice dismissal is too severe a remedy.  This prosecution involves serious crimes but not the sort of "more egregious [STA] violation" that needs added deterrence.[135]  Accordingly, the Court dismisses the indictment without prejudice.

### D.    Ineffective Assistance of Counsel

Having earned dismissal, "there is nothing for [the Court] to remedy" in addressing Defendants' remaining ineffective-assistance arguments.[136]  Taking up those arguments would employ the Court to a business it has no business involving itself in: "the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong."[137]  As such, the arguments—which, appear to have never been ripe in the first place[138]—are denied as moot.

## III.   Conclusion

IT IS THEREFORE ORDERED that Defendants' Joint Motion to Dismiss Indictment Due to Violations of Speedy Trial Rights (Doc. 199) is GRANTED.  The Second Superseding Indictment is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Joint Motion For Relief Due to Ineffective Assistance of Counsel (Doc. 202) is DENIED AS MOOT.

**IT IS SO ORDERED**.

/s/ Stephen R. Bough_____
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 6, 2020

---

[135] *Id.* ("[T]he application of the more serve sanction of dismissal with prejudice . . . should be reserved for more egregious violations.").

[136] *Spencer v. Kemma*, 523 U.S. 1, 18 (1998).

[137] *Id.*

[138] *See Muhtorov v. Choate*, 697 F. App'x 608, 609 (10th Cir. 2017) ("[I]neffective assistance of counsel claims generally are raised post-conviction, . . . and not on direct appeal, *let alone pretrial*." (emphasis added)); *United States v. Johnson*, Case No. 17-20034-01-DDC, 2019 WL 5395749, at *2 (D. Kan. Oct. 22, 2019) ("[Defendant's] argument for ineffective assistance of counsel is premature as he has not yet been convicted of a crime.").